William G. MITCHELL,
Plaintiff-Appellant,

v.

PEPSI–COLA BOTTLERS, INC., and International Association of Machinists and Aerospace Workers, a/k/a Automobile Mechanics Union, #701, Defendants-Appellees.

No. 84–2949.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1985.

Decided Sept. 3, 1985.

Rehearing Denied Oct. 8, 1985.

Julius Padgimas, Chicago, Ill., for plaintiff-appellant.

William R. Sullivan, Jr., Seyfarth Shaw Fairweather & Geraldson, and John L. Collins, Chicago, Ill., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Plaintiff-appellant Mitchell filed a two-count complaint against defendant-appellee Pepsi-Cola Bottlers, Inc. (Pepsi-Cola or Pepsi) in Illinois state court on May 11, 1984, alleging that Pepsi, by its agents, tortiously had procured Mitchell's resignation from employment and had defamed Mitchell. Mitchell amended his complaint on May 18, 1984, to include a third count joining as a defendant Automobile Mechanics Local # 701 (the Union). Count III alleged that the Union and Pepsi-Cola had conspired to deprive Mitchell of whatever rights he possessed under a collective bargaining agreement negotiated by the Union and Pepsi-Cola. The Union and Pepsi-Cola thereafter jointly filed, in the United States District Court for the Northern District of Illinois, a petition to remove Mitchell's causes of action to federal court, on the ground that Mitchell's claims arose under section 301 of the Labor Management Relations Act. 29 U.S.C. § 185 (1978). Four days later, Mitchell voluntarily dismissed Count III of his amended complaint, leaving Pepsi-Cola as the sole defendant in the action. Mitchell then filed a motion to remand Counts I and II to Illinois state court. In a memorandum opinion dated October 26, 1984, the district court denied Mitchell's motion to remand, granted summary judgment for Pepsi-Cola on Count I, and dismissed Count II. Mitchell appeals from the district court's action.

## I. THE FACTS

Plaintiff Mitchell worked for defendant Pepsi-Cola as a mechanic until May 18, 1982. During his employment, plaintiff was a member of Automobile Mechanics Union # 701, and was a beneficiary of a collective bargaining agreement negotiated by the Union and Pepsi-Cola. The collective bargaining agreement prohibited termination of employees without just cause and established a grievance and arbitration procedure for the settlement of employee grievances.

At some point prior to May 18, 1982, Pepsi-Cola transferred Mitchell from its Elk Grove, Illinois, facility to a facility located in Gurnee, Illinois. Mitchell maintains that defendant Pepsi-Cola's agents instructed him at that time to bring certain of defendant's tools to the Gurnee plant. Later, Pepsi-Cola accused Mitchell of stealing the tools. This dispute led to Mitchell's involuntary resignation.

Mitchell contends that Pepsi's conduct in procuring his resignation was fraudulent and coercive, amounting to a tort under Illinois law. Mitchell maintains that Pepsi's agents threatened that Mitchell would never work again unless Mitchell resigned from employment at Pepsi and that they threatened to blackball Mitchell if he sought employment at other plants. Mitchell further contends that Pepsi's agents defamed him in their efforts to procure his resignation.

In accordance with the collective bargaining agreement in force between Pepsi and the Union, Mitchell filed a grievance and requested a hearing to determine the validity of his involuntary resignation. The outcome of that hearing was apparently unfavorable to Mitchell. At oral argument, counsel for Mitchell contended that Mitchell failed to seek further review according to contract procedures because his union steward told him it would be useless to proceed further.

Approximately two years later, Mitchell filed suit in state court against Pepsi, challenging the manner of his termination from employment. One week later, Mitchell joined the Union as a defendant in the action, but later voluntarily dismissed his claims against the Union. Following removal of the action to federal court, on the ground that Mitchell's cause of action arose under 29 U.S.C. § 185 (1978), Pepsi successfully sought dismissal of Mitchell's involuntary resignation claim for failure to exhaust contractual remedies. The district court also dismissed Mitchell's defamation claim without prejudice, declining to exercise jurisdiction over the defamation claim after dismissal of the involuntary resignation claim, and observing that the defamation claim was untimely filed according to Illinois law. Mitchell argues that the district court erroneously exercised removal jurisdiction over his tort claims and contends that the court should have remanded the claims to state court.

## II. REMOVAL JURISDICTION AND § 301

■ According to 28 U.S.C. § 1441(b), "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States [is] removable without regard to the citizenship of the parties." 28 U.S.C. § 1441(b) (1973). In other words, a defendant may remove a cause of action presenting a federal question to federal court without regard to diversity of citizenship. In addition, subsection (c) of 28 U.S.C. § 1441 makes clear that a defendant may remove an entire case to federal court whenever a removable claim is joined with one or more otherwise non-removable claims. 28 U.S.C. § 1441(c) (1973).

■ In this case, defendant Pepsi removed plaintiff's case to federal court on the ground that plaintiff's cause of action for tortious termination of employment arose under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1978). Section 301 confers original jurisdiction on the district courts over suits for violation of collective bargaining agreements negotiated by labor organizations and employers in industries affecting commerce. 29 U.S.C. § 185 (1978). Defendant Pepsi contended that plaintiff's involuntary resignation claim alleged a violation of the collective bargaining agreement in force between Pepsi and the Union, even though plaintiff's complaint did not present explicitly such a theory of recovery. Plaintiff's complaint did allege, however, that plaintiff was a member of the Union at the time Pepsi forced him to resign from employment and that plaintiff possessed rights under a collective bargaining agreement negotiated between defendant and the Union. Plaintiff's short-lived amended complaint alleged that the Union and Pepsi had conspired to deny plaintiff such rights.

■ After reviewing these allegations in plaintiff's complaint, the district court concluded that the complaint stated a cause of action for violation of a collective bargaining agreement under section 301. We agree. We acknowledge, of course, that whether a complaint presents such a federal question ordinarily depends on the theory of recovery advanced in a plaintiff's well-pleaded complaint. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983). We acknowledge, in addition, that a complaint does not present a federal question merely because it anticipates or elicits a federal defense. *Id.* at 10, 103 S.Ct. at 2846. A plaintiff may not avoid federal question jurisdiction, however, by artfully omitting to plead federal questions essential to his or her right of recovery. *Id.* at 22, 103 S.Ct. at 2853.

The district court correctly stated and applied this well-pleaded complaint rule as well as its artful pleading exception in construing the allegations of plaintiff's complaint. The district court found, and we agree, that the gist of plaintiff's complaint was a claim for relief due to Pepsi's allegedly tortious behavior in accusing plaintiff of stealing tools and in procuring his resig-

nation from employment. We concur with the district court that defendant and the Union intended their collective bargaining agreement to govern such disputes. Indeed, the agreement contained provisions relating to discharge for theft, defendant's responsibility to furnish mechanics such as plaintiff with tools, and a grievance and arbitration procedure for "all difficulties and misunderstandings" arising out of the application of the collective bargaining agreement. Thus, plaintiff's complaint presented a type of dispute which defendant and the Union had anticipated and for which they had provided an administrative resolution procedure. This dispute therefore implicated a collective bargaining agreement, concededly in an industry affecting commerce, and fell within the original jurisdiction conferred on the district courts by section 301. 29 U.S.C. § 185 (1978). *See Allis-Chalmers Corp. v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). As a result, it presented a federal question and removal to federal court was proper.

### III. PREEMPTION AND § 301

Our conclusion that plaintiff's complaint presented a federal question is bolstered by the many cases holding that federal law preempts state law in cases arising under section 301. *See, e.g., Allis-Chalmers Corp. v. Lueck,* 105 S.Ct. at 1910–12; *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. at 23, 103 S.Ct. at 2853, *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). *See also,* Note, *Federal Preemption, Removal Jurisdiction and the Well-Pleaded Complaint,* 51 U.CHI.L.REV. 634, 665 (1984). Although state courts retain concurrent jurisdiction over cases arising under section 301, *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 506, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962), state courts adjudicating such cases must apply federal law. *Textile Workers Union v. Lincoln Mills,* 353 U.S. at 456, 77 S.Ct. at 917. The federal law governing these section 301 cases includes a federal policy favoring arbitration of labor-management disputes, *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (*Steelworkers I*); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (*Steelworkers II*), and a federal interest in uniformity of result, *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The federal policy favoring private arbitration of labor disputes has induced courts to establish a requirement that employees suing under section 301 first exhaust their administrative remedies. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1488 (7th Cir.1985); *Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985). The federal interest in uniformity of result under section 301 has produced a multitude of cases foreclosing suits based on state common law when the disputes underlying those suits turn on the terms of an agreement between parties to a labor contract. *Allis-Chalmers Corp. v. Lueck,* 105 S.Ct. at 1916; *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1473–74 (9th Cir. 1984); *Moore v. General Motors Corp.,* 739 F.2d 311, 317 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985).

In *Allis-Chalmers,* for example, the Supreme Court held that section 301 preempted a state law claim based on alleged bad faith in the handling of an employee's disability claim because the claim required interpretation of a collective bargaining agreement. *Id.,* 105 S.Ct. at 1916. The Eighth Circuit reached an analogous result in *Moore v. General Motors Corp.,* 739 F.2d at 316, where the court found that section 301 preempted a state law claim alleging negligence and fraud in the transfer of employees to a new plant because any transfer rights possessed by employees derived from a collective bargaining agreement.

Several decisions from the Ninth Circuit employ similar analysis in dismissing state law claims. *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d at 1474–76 (9th Cir.1984); *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1351 (9th Cir.1984). *Cf. Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1368 (9th Cir.1978) (decided under the Railway Labor Act), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323. In *Olguin*, for example, the Ninth Circuit dismissed state law claims for wrongful discharge and infliction of emotional distress because the court found that the claims concerned the terms and conditions of plaintiff's employment as set forth in a collective bargaining agreement. *Id.*, 740 F.2d at 1474–76.

■ Nevertheless, federal law does not preempt all state law claims concerning employment or all claims involving a provision of a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 105 S.Ct. at 1911. To the contrary, the Supreme Court has recognized several varieties of state law claims that fall outside the preemptive sweep of federal labor law. *See Belknap, Inc. v. Hale*, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (employer misrepresentations to replacement workers); *Sears, Roebuck & co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (union trespassing); *Farmer v. United Brotherhood of Carpenters, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (outrageous union conduct resulting in employee emotional distress); *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (malicious defamation); *International Union, United Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (mass picketing accompanied by threats of violence). In permitting these state law claims, the Supreme Court has often emphasized that the claims threatened no interference with the operation of federal labor law and that the claims involved issues unrelated to the central concerns of federal labor statutes. In *Sears, Roebuck*, for example, the Supreme

Court emphasized that a state trespass action would focus on the location of challenged union picketing, unlike an unfair labor practice proceeding, which would focus on the object of the union's picketing. *Id.*, 436 U.S., at 198, 98 S.Ct. at 1758.

■ Plaintiff contends that his involuntary discharge claim falls within these exceptions to the general preemption rule because his claim focuses on the abusive manner in which Pepsi procured his resignation rather than on the question whether his forced resignation was supported by just cause. Moreover, plaintiff asserts that his involuntary resignation claim cannot implicate the collective bargaining agreement between Pepsi and the Union because defendant did not discharge plaintiff, but sought to avoid the provisions of the collective bargaining agreement by forcing plaintiff to resign involuntarily. We believe plaintiff interprets too narrowly the protections afforded by the just cause provisions, among others, of the collective bargaining agreement. Plaintiff's involuntary resignation claim appears to state a claim for constructive discharge and to seek relief on the ground that his constructive discharge was wrongful. In addition, the lost wages and other damages which plaintiff alleges as a result of his constructive discharge appear to be an incident of the discharge itself and not an incident of independent tortious activity by Pepsi. *See Magnuson v. Burlington Northern, Inc.*, 576 F.2d at 1369. The constructive discharge, therefore, presented issues covered by the collective bargaining agreement between Pepsi and the Union—issues which could have been resolved by grievance and arbitration. Plaintiff's involuntary resignation dispute, unlike the disputes presented to the Supreme Court in cases such as *Sears, Roebuck* and *Farmer*, involved issues central to the concerns reflected by section 301 and the cases decided thereunder.

We note, additionally, that many disputes involving involuntary resignations rather than standard discharges have been re-

solved by grievance and arbitration in accord with contract procedures. *See, e.g., Ralph's Grocery Co. v. Retail Clerk's Union, Local 770*, 77 Lab.Arb. (BNA) 867, 870–71 (1981) (Kaufman, Arb.); *General Battery Corp. v. United Automobile Workers, Local 1049*, 74 Lab.Arb. (BNA) 505, 506 (1980) (Craig, Arb.); *Skaggs Supercenters, Inc. v. Retail Store Employees Union, Local 782*, 73 Lab.Arb. (BNA) 544, 546 (1979) (Cohen, Arb.). These arbitration cases correctly characterize involuntary resignations as constructive discharges fully subject to administrative dispute resolution. *Ralph's Grocery Co.*, 77 Lab.Arb. (BNA) at 870–71. We agree with that analysis and remark that a contract's prohibition against discharge without just cause would be nugatory if an employer could avoid its effect simply by forcing employees to quit before taking action to fire them.

## IV. THE EXHAUSTION DEFENSE

■ Because plaintiff's constructive discharge claim presented issues which substantially depended upon the terms of the collective bargaining agreement between defendant and the Union, the claim arose under section 301, *Allis-Chalmers Corp. v. Lueck*, 105 S.Ct. at 1916, and required reference to federal substantive law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. at 456, 77 S.Ct. at 917. That law, as we previously noted, includes a strong preference for private arbitration as a method to resolve labor disputes. *Allis-Chalmers*, 105 S.Ct. at 1915; *Steelworkers II*, 363 U.S., at 582, 80 S.Ct. at 1352. As the Supreme Court observed in *Steelworkers II*:

> ... [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which

will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

*Id.* at 581, 80 S.Ct. at 1351.

The federal law governing section 301 claims also includes, as we have noted, a general requirement that employees must attempt to exhaust grievance and arbitration procedures before bringing suit in federal or state court. *Republic Steel Corp. v. Maddox*, 379 U.S. at 652, 85 S.Ct. at 616; *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1214 (9th Cir.1980) (per curiam). In the case before us, plaintiff initiated grievance and arbitration proceedings but declined to pursue the full range of administrative review available under the collective bargaining agreement, apparently because his union steward told him it would be useless to proceed further. Plaintiff does not allege, however, that his union representatives committed a breach of their duty fairly to represent him in processing his grievance. Plaintiff therefore cannot protest that requiring him to exhaust administrative remedies under the collective bargaining agreement would result in unfairness because his union representatives subverted the grievance and arbitration process and thereby breached their duty of fair representation.[1] *See Huffman v. Westinghouse Electric Corp.*, 752 F.2d at 1223. As a result, federal law obligated plaintiff to exhaust his contract remedies before bringing suit under section 301. Because plaintiff failed to exhaust his contract remedies, the district court properly granted summary judgment for defendant on plaintiff's involuntary resignation claim.

## V. PLAINTIFF'S DEFAMATION CLAIM

■ After construing plaintiff's involuntary resignation claim as a section 301 claim, and dismissing the claim for failure to exhaust contract remedies, the district

---

**1.** Furthermore, plaintiff's case fails to fall within any other exception to the exhaustion rule.

· *See D'Amato v. Wisconsin Gas Co.*, 760 F.2d at 1488–89.

court additionally dismissed plaintiff's defamation claim. In dismissing the defamation claim, the district court relied on *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), where the Supreme Court observed that state law claims joined to federal questions under the doctrine of pendent jurisdiction should usually be dismissed if the federal questions to which they are attached are dismissed pretrial. The district court also noted that the defamation claim appeared to be untimely under Illinois' one-year statute of limitations for defamation actions. ILL.REV.STAT. ch. 110 § 13–201 (1983).

This court finds that the district court correctly applied the rule of *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, in dismissing the defamation claim. The defamation claim would survive the preemptive effect of federal labor law, and require application of state law, if plaintiff could prove that Pepsi's agents falsely accused plaintiff of theft, with knowledge that the accusations were false or with reckless disregard as to their truth or falsity.[2] *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. at 61, 86 S.Ct. at 662. Such a claim would not fall within the jurisdiction of the federal courts, however, assuming no diversity of citizenship existed, unless it were linked to a federal question by means of pendent jurisdiction. In this case, the prerequisite federal question disappeared before trial. Because no additional federal questions remained, and because diversity of citizenship did not exist between plaintiff, an Illinois resident, and Pepsi, a corporation with its principal place of business in Illinois, the district court correctly dismissed the defamation claim.

## VI. CONCLUSION

This court holds that the district court correctly entered summary judgment for defendant on plaintiff's claim for tortious termination of employment on the ground that plaintiff failed to exhaust his contract remedies. This court additionally holds that the district court correctly dismissed plaintiff's defamation claim under the doctrine of pendent jurisdiction. This court therefore AFFIRMS the judgment of the district court.

---

**2.** If plaintiff could not prove that defendant's agents made the accusations with such "actual malice" the claim would likely be preempted by federal labor law. *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. at 64–65, 86 S.Ct. at 663–664.