**Jose J. ROMAN, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

No. 86–2242.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1987.

Decided June 1, 1987.

Arthur Ehrlich, Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.

Geoffrey Drucker, U.S. Postal Service, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

In this appeal, Jose Roman, a former postal worker, argues that the district court improperly dismissed his due process claim for failure to exhaust grievance procedures under the collective bargaining agreement. We affirm the district court's decision.

### I. Facts

In 1983, Roman was a career employee at the United States Post Office in Bartlett, Illinois. He was also a member of the National Association of Letter Carriers (the Union), which is the exclusive collective bargaining agent for letter carriers at Bartlett and around the country. The terms and conditions of Roman's employment were governed by a collective bargaining agreement between the Union and

the United States Postal Service (the Postal Service).

Shortly after Roman received his career appointment, Ira Shinn, the Postmaster at the Bartlett Post Office, accused him of falsifying his employment application form. Although Roman denied falsifying the form, Shinn told him that he could either leave his employment "the easy way" or forcibly. Shinn promised Roman that if he resigned he would be rehired at another postal facility.

At some point after Roman had resigned (the record does not reveal when), Roman "determined that Shinn's threats and coercion and promises and inducements were all false and fraudulent." Roman was not rehired at another facility and the Postal Service did not assist him in finding new employment.

Roman filed this action against the Postal Service seeking reinstatement, backpay and punitive damages. He alleged that the Postal Service had violated his due process rights in fraudulently inducing him to resign from his employment.[1]

The Postal Service filed a motion to dismiss under Fed.R.Civ.P. 12(b). The motion was supported by excerpts from the collective bargaining agreement and an affidavit from Shinn which stated that he had made a thorough search of the Postal Service's records and could find no record of a grievance filed by Roman or on his behalf relating to his involuntary resignation claim. In Roman's response to the motion to dismiss, he argued that when he learned of his grievance he had already resigned and therefore was no longer an "employee" required to exhaust contractual remedies. He also attached an affidavit in which he stated that after he learned that he would not be rehired by another postal facility, he had approached Shinn who told him that there was nothing he could do to help Roman because he had already resigned. In addition, the affidavit stated that Roman had contacted Union representatives but

was informed that once he had resigned he was no longer an employee and could not file a grievance under the collective bargaining agreement.

The district court found that Roman's due process claim was necessarily a postal labor claim under 39 U.S.C. § 1208(b), that the Postal Service had breached the collective bargaining agreement. The district court dismissed the claim because Roman's complaint contained no allegations that he had exhausted the grievance procedures set out in the agreement. Roman appeals.

## II. Standard of Review

The first issue on appeal is the appropriate standard of review. The district court apparently dismissed the action under Fed. R.Civ.P. 12(b)(1), concluding that Roman's failure to exhaust contractual remedies deprived it of subject matter jurisdiction. By construing Roman's claim as one for breach of the collective bargaining agreement, however, the district court implicitly found that it did have subject matter jurisdiction. Under § 2 of the Postal Reorganization Act (PRA), district courts with personal jurisdiction over the parties have subject matter jurisdiction over

[s]uits for violations of contracts between the Postal Service and a labor organization representing Postal Service employees ...

39 U.S.C. § 1208(b). Since the district court had subject matter jurisdiction over the action, it should not have labeled it a Rule 12(b)(1) dismissal. Rather, the district court should have considered the Postal Service's motion under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Roman failed to demonstrate that he exhausted the contractual remedies and that is a prerequisite to his claim for relief. *See, e.g., D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1476, 1488–89 (7th Cir.1985) (affirming dismissal of claim for breach of collective bargaining agreement under Rule 12(b)(6) for failure

---

1. In a second count, Roman also attempted to state a claim against the Postal Service for intentional misrepresentation. The district court dismissed this claim on the ground that it was barred by sovereign immunity. Roman does not challenge on appeal the district court's dismissal of this second count.

to exhaust contractual remedies); *Mudahy v. Cleaver,* 590 F.Supp. 1209, 1210 (W.D. Mich.1984) (Rule 12(b)(6) dismissal of postal employee's claim for failure to exhaust contractual remedies); *but see Rivera v. Government of Virgin Islands,* 635 F.Supp. 795, 797 (D.V.I.1986) (exhaustion of contractual remedies is an issue to be decided under Rule 12(b)(1)); *Wynn v. Boeing Military Airplane Co.,* 595 F.Supp. 727, 728 (D.Kan.1984) (absent exhaustion of contractual remedies district court had no jurisdiction).

■ Whether the district court properly dismissed under Rule 12(b)(1) affects this court's standard of review because the district court clearly went outside the pleadings and considered Shinn's affidavit but not Roman's. It is proper for the district court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in determining whether subject matter jurisdiction exists under Rule 12(b)(1). *Grafon Corp. v. Hausermann,* 602 F.2d 781, 782 (7th Cir.1979). But if the district court is considering whether a claim should be dismissed under Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the district court" the motion should be treated as one for summary judgment under Fed.R.Civ.P. 56(c). *See* Fed.R.Civ.P. 12(b); *Malack v. Associated Physicians Inc.,* 784 F.2d 277, 279 (7th Cir.1986); *Crawford v. United States,* 796 F.2d 924, 927 (7th Cir.1986). Since the district court had subject matter jurisdiction and it considered matters outside the pleadings, we will review the dismissal under the same standard that we would a summary judgment motion.[2]

Summary judgment is proper only when the moving party has established that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The existence of a gen-uine issue of material fact is a legal determination subject to *de novo* review. *In re Colonial Discount Corp.,* 807 F.2d 594, 596 (7th Cir.1986). In considering a motion for summary judgment, all ambiguities and reasonable inferences are to be resolved against the moving party and in favor of the party opposing the motion. *Brock v. American Postal Workers Union,* 815 F.2d 466, 469 (7th Cir. March 26, 1987); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial).

### III. Jurisdictional Basis of Roman's Claim

The district court concluded that Roman's claim was essentially based upon a breach of the collective bargaining agreement. We believe that conclusion was correct. Roman's complaint asserted that jurisdiction was proper under 28 U.S.C. § 1339, which grants district courts jurisdiction "over any civil action arising under any Act of Congress relating to the Postal Service." Section 1339 does not, however, create an independent source of jurisdiction. *Peoples Gas, Light & Coke Co. v. United States Postal Service,* 658 F.2d 1182, 1189–92 (7th Cir.1981). By permitting the Postal Service, an independent executive establishment, to sue and be sued, § 1339 only removes the sovereign immunity barrier that might otherwise exist in suits involving the Postal Service. *Id.* In order for the district court to have jurisdiction, Roman's complaint had to be based upon some other substantive legal framework.

■ Roman's allegation that the Postal Service violated his due process rights in

**2.** Reviewing the district court's action under the summary judgment standard can create difficulties where, as in this case, the parties did not receive notice that the motion would be converted to summary judgment. But if nothing else could have been raised to alter the entry of summary judgment, a failure to give notice does not require reversal. *Malack,* 784 F.2d at 281 (citing cases). Here, both parties submitted affidavits on the exhaustion issue. It is clear from Roman's affidavit that there was nothing else he could have raised to alter the entry of summary judgment on the exhaustion issue.

threatening him and forcing him to resign does not provide jurisdiction. Where Congress has created an elaborate, remedial scheme which adequately and comprehensively addresses the protection of constitutional rights in the employment context, an employee whose rights are protected through that scheme cannot bring a new, non-statutory action. *Bush v. Lucas*, 462 U.S. 367, 385, 103 S.Ct. 2404, 2415, 76 L.Ed.2d 648 (1983). In *Ellis v. United States Postal Service*, 784 F.2d 835, 839–40 (7th Cir.1986), postal employees raised political discrimination claims based upon the due process clause of the Fifth Amendment. This court affirmed the district court's dismissal of those claims, holding that the means for redressing grievances in the Postal Service are both adequate and comprehensive. This court emphasized that "Congress has expressly authorized the adoption of final and binding grievance provisions in the Postal Service collective bargaining agreements, 29 U.S.C. § 1206(a), and ... the particular collective bargaining agreement between the Postal Service and the employees' union establishes a multi-step procedure which culminates in binding third-party arbitration." *Id.* at 839–40. *But see McNair v. United States Postal Service*, 768 F.2d 730, 736 n. 8 (5th Cir.1985). Thus, the postal employees were not entitled to bring their claims directly under the due process clause.

■ A postal employee does have a property interest in continued employment which is entitled to due process protection. *Winston v. United States Postal Service*, 585 F.2d 198, 208–09 (7th Cir.1978). This property interest is created by the collective bargaining agreement between the Postal Service and the Union, which provides that no employee shall be disciplined or discharged "without just cause." When a postal employee is covered by a collective bargaining agreement the employee is limited to the due process protections provided by the grievance procedures in that agreement. *See id.* at 210 (the procedures adopted between the Postal Service and the American Postal Workers Union satisfy the requirements of due process).

■ In this case, Roman's due process claim arose in his employment relationship with the Postal Service. That relationship was governed by a collective bargaining agreement between the Postal Service and Roman's union which provided that employees could only be discharged for "just cause." The district court correctly concluded that Roman's claim was necessarily one for breach of the collective bargaining agreement and that he was therefore limited to the due process protections provided in that agreement.

### IV. Exhaustion of Contractual Remedies

■ The district court was also correct in determining that Roman was required to attempt to exhaust his contractual remedies. The requirement of exhaustion of contractual remedies under § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a), applies to suits brought pursuant to the PRA. *See McNair*, 768 F.2d at 735. The central purpose in enacting the PRA's labor management provisions was to "bring postal labor relations within the same structure that exists for nationwide enterprises within the private sector." House Report at 13, 1970 U.S. Code Cong. & Ad.News 3649, 3662. Under § 301(a) of the LMRA, employees must at least attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement before seeking judicial enforcement of their rights under the contract. *Vaca v. Sipes*, 386 U.S. 171, 184–85, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967); *Huffman v. Westinghouse Electric Corp.*, 752 F.2d 1221, 1223 (7th Cir.1985). In this case, since Roman's claim was essentially based upon a breach of the collective bargaining agreement, he was bound by the terms of that agreement which govern the manner in which contract rights may be enforced.

Roman argues that he was not obligated to pursue his contractual remedies because the collective bargaining agreement only provided an "employee" with procedures for resolving grievances. Since he had already resigned when he learned of his

grievance, he claims that he was no longer an "employee" within the scope of the agreement and therefore was not required to exhaust his remedies under it. Roman analogizes his situation to that of a retired employee. He relies upon *Anderson v. Alpha Portland Industries,* 752 F.2d 1293 (8th Cir.) (en banc), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985). In *Anderson,* the Eighth Circuit held that retired employees are not required to exhaust contractual remedies before bringing an action against their employer to recover insurance benefits under the collective bargaining agreement in effect when they retired. In *Anderson* the court noted that it would be unfair to require retirees to exhaust remedies controlled by the Union because the Union does not owe them a duty of fair representation. *Id.* at 1298 n. 11. The *Anderson* court relied upon *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 172, 92 S.Ct. 383, 393, 30 L.Ed.2d 341 (1971), in which the Supreme Court held that retirees are not "employees" within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 151–168, and cannot properly be joined with active employees in a collective bargaining unit. In *Allied Chemical,* the Supreme Court distinguished retirees who have completely and finally severed their employment relationship, from individuals who, while not presently "employees" for some reason, were members of the active work force available for hire. *Id.* at 168, 92 S.Ct. at 392 (distinguishing individuals who have quit or whose employers have gone out of business). The *Allied Chemical* Court pointed out that retirees and active employees lack the necessary "mutuality" or "community of interests" necessary to "assure the coherence among employees necessary for efficient collective bargaining and at the same time prevent a functionally distinct minority group of employees from being submerged." *Id.* at 172–73, 92 S.Ct. at 393–94.

■ Roman's situation is quite distinguishable from that of the retirees in *Anderson.* Unlike the retirees, Roman's claim concerns events which occurred while he was an employee and a member of the collective bargaining unit to whom the Union owed a duty of fair representation. In addition, Roman did not completely and finally sever his employment relationship with the Postal Service; he anticipated being rehired. Roman contends that he was not a member of the active work force available for hire because the Postal Service did not intend to rehire him as they had promised. But Roman's claim is no different from that of any other employee who has quit or been fired. Those employees are limited to the collective bargaining agreement and are required to attempt to exhaust their contractual remedies. Likewise, Roman's involuntary resignation claim connotes employer-labor relations which are governed by the collective bargaining agreement and therefore he was required to attempt to exhaust his contractual remedies.

Moreover, this court has rejected an almost identical argument in *Mitchell v. Pepsi-Cola Bottlers, Inc.,* 772 F.2d 342, 347 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). In that case, Mitchell, a former employee of Pepsi, alleged that Pepsi had accused him of stealing and threatened him that he would never work again unless he resigned from employment. Mitchell filed a grievance with his Union which was rejected at the first step. After a Union steward told Mitchell that it would be useless to process his grievance further, Mitchell did not pursue his grievance. He then filed suit against Pepsi claiming that it had tortiously terminated his employment contract. The district court dismissed his involuntary resignation claim for failure to exhaust contractual remedies. This court affirmed, holding that Mitchell's state tort law claim was preempted by the LRMA and that Mitchell was required to exhaust contractual remedies. Mitchell asserted that his involuntary resignation claim could not implicate the collective bargaining agreement because Pepsi did not fire him, but sought to avoid the provisions of the collective bargaining agreement by forcing him to resign involuntarily. This court construed

Mitchell's involuntary resignation claim as a claim for wrongful constructive discharge and concluded that the Union intended the provisions of the collective bargaining agreement prohibiting discharge without just cause to govern such a dispute. *Id.* at 346–47 (citing cases where disputes involving involuntary resignations rather than standard discharges have been resolved by grievance and arbitration in accordance with contractual procedures).

In his reply brief, Roman attempts to distinguish *Mitchell.* He asserts that, unlike Mitchell, he was not allowed to file a grievance. This distinction, however, relates only to Roman's argument that the facts of this case justify an exception to the exhaustion requirement. It does not relate at all to the *Mitchell* holding that an employee who claims that he was forced to involuntarily resign must attempt to exhaust his contractual remedies. Roman also asserts that the *Mitchell* case is distinguishable because, unlike Mitchell, it was not clear to him that he was being constructively discharged at the time he was forced to resign. By the time he discovered that he would not be rehired, he claims, it was too late to file a grievance. Roman's argument is meritless. The collective bargaining agreement in this case allows an employee to initiate a grievance within fourteen days of the date on which the employee learned of his grievance or should reasonably have been expected to learn of its cause. If Roman did not learn of his grievance until after he had resigned, he still had time to initiate a grievance under the collective bargaining agreement.

Roman also seeks to avoid the consequences of the exhaustion requirement by claiming that he falls within an exception to the requirement. The Supreme Court has held that an employee may be excused from exhausting contractual remedies where (1) the conduct of the employer amounts to a repudiation of the contractual remedies so that the employer "is estopped by his own conduct to rely upon unexhausted grievance and arbitration procedures as a defense to the employee's cause of action," *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914; (2) resorting to the grievance procedures provided would be wholly futile, for example, where those who would pass on the claims are the very individuals charged with violating the complaining employee's rights initially, *Glover v. St. Louis-San Francisco Rwy,* 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed.2d 519 (1969); or (3) the Union has breached its duty of fair representation in that the Union has the sole power under the agreement to invoke the higher stages of the agreement and has prevented the employee from exhausting contractual remedies by wrongfully refusing to process the grievance. *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914. *See also D'Amato,* 760 F.2d at 1488–89. Roman does not argue, however, that any of these exceptions apply. Instead, he attempts to create an additional exception based upon the fact that he was told by Union representatives and Shinn that there was nothing they could do for him because he was no longer an employee. Nevertheless, it is clear that Roman is basically arguing the third exception, that the Union's wrongful refusal to process his grievance justifies excusing the exhaustion requirement. Roman's allegations regarding his attempted exhaustion were not considered by the district court in its decision as they were presented only in Roman's affidavit and not in his complaint. Nevertheless, we do not believe these allegations excuse Roman's failure to exhaust his contractual remedies.

■ A Union breaches its duty of fair representation when it acts in discriminatory, dishonest, arbitrary or perfunctory manner. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). But Roman did not allege in his complaint or affidavit that the Union representatives' statements amounted to a breach of the Union's duty of fair representation. Even after the Postal Service pointed out this deficiency in its motion to dismiss, Roman did not seek leave to amend his complaint to correct it. He "therefore cannot protest that requiring him to exhaust [his contractual remedies] would re-

sult in unfairness because his union representatives subverted the grievance and arbitration process and thereby breached their duty of fair representation." *Mitchell,* 772 F.2d at 347.[3] *See also Vaca,* 386 U.S. at 186, 87 S.Ct. at 914 (wrongfully discharged employee may bring action against his employer in the face of a defense based upon the failure to exhaust contractual remedies provided the employee can prove the Union as bargaining agent breached its duty of fair representation in its handling of grievance).

In addition, we agree with the Postal Service that Roman did not properly initiate the first step of the grievance procedure. The Postal Service points out that Roman's consultations with Shinn and Union representatives were not proper attempts to exhaust contractual remedies because the collective bargaining agreement requires an employee to initiate a grievance by first discussing it with his immediate supervisor [4] and Roman did not discuss his grievance with his immediate supervisor.

An employee attempting to exhaust his contractual remedies is required to use the procedures set out in the collective bargaining agreement. *Vaca,* 386 U.S. at 184, 87 S.Ct. at 913; *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). For example, in *Steen v. Local Union No. 163,* 373 F.2d 519, 520 (6th Cir.1967), the collective bargaining agreement required that an employee first take up his grievance with the foreman. The plaintiff did not contact the foreman, but instead contacted various Union officials. The Sixth Circuit refused to allow such contacts as a substitute for the requirement that the plaintiff first con-

tact the foreman. *Id.* The court reasoned that "to allow such activity to serve as a substitute for the contractual grievance procedure would … 'deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances.'" *Id.* (quoting *Republic Steel,* 379 U.S. at 653, 85 S.Ct. at 616). We find this reasoning persuasive. (For similar cases involving a failure to exhaust internal union remedies *see Miller v. General Motors Corp.,* 675 F.2d 146, 149–50 (7th Cir.1982) (Union official withdrew plaintiff's grievance, told plaintiff that it lacked merit, and informed plaintiff that he could appeal withdrawal but that official would withdraw it again if grievance was reinstated; exhaustion of internal union appeals not excused; reliance upon official's statements not reasonable); *Baldini v. Local Union No. 1095,* 581 F.2d 145, 148 (7th Cir.1978) (no exception to exhaustion of internal union remedies requirement where plaintiff told by Union official that nothing more could be done for him); *Newgent v. Modine Manufacturing Co.,* 495 F.2d 919, 927–28 (7th Cir.1974) (allegations of ignorance and reliance upon misleading statements from Union president that any effort to utilize internal appeals procedures would be fruitless are not sufficient to avoid defense of failure to exhaust internal union remedies; Union member is under a contractual obligation to be familiar with Union's constitution).

Roman attempts to distinguish *Steen* because the Union representatives told him in this case that he could not file a grievance because he was no longer an employee within the scope of the collective

---

**3.** Even though Roman has not sued the Union, he must still show that the Union breached its duty of fair representation in refusing to process the grievance. *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

**4.** The grievance and arbitration requirements contained in the contract between the Postal Service and the Union in this case provide for a four-step grievance procedure. At Step 1 "[a]ny employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned

or may reasonably have been expected to learn of its cause." Art. 15 § 2. The employee if he desires may be accompanied and represented by the employee's steward or Union representative. The Union may also initiate a grievance at Step 1. If the employee is not successful at Step 1, the Union is entitled to appeal an adverse decision on the employee's behalf and can elect to pursue the grievance through the next three steps. If the grievance is not settled, the Union may appeal the grievance to arbitration. Art. 15 § 4.

bargaining agreement. He argues that there was no point in his contacting his immediate supervisor once he was told he was no longer an employee. We disagree. Roman was responsible for becoming familiar with his collective bargaining agreement. Roman's claim was within the agreement and according to the agreement an employee must first discuss his grievance with his immediate supervisor. The agreement specifically provides that "no employee may be disciplined or discharged except for just cause" and that "any such discipline or discharge shall be subject to the grievance-arbitration procedures." Art. 16 § 1. Since the agreement gave Roman fair notice that his claim was subject to it and Roman did not properly initiate the first step of the grievance procedure and, moreover, allege that the Union breached its duty of fair representation, he cannot complain that the statements made by Shinn and Union representatives prevented or precluded him from proceeding under the collective bargaining agreement. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *Mitchell,* 772 F.2d at 346. Thus, even viewing the facts in the light most favorable to Roman, he has failed to state a claim.

There is no genuine issue of material fact and the Postal Service has demonstrated that it is entitled to judgment as a matter of law. Accordingly, for the reasons stated above, we affirm the district court's decision.