Glenn L. ATCHLEY, et al., Plaintiffs,

v.

HERITAGE CABLE VISION ASSOCI-
ATES, a limited partnership, d/b/a
TCI of Michiana, Defendant.

No. 3:95–CV–432RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 29, 1996.

William R. Groth, Fillenwarth Dennerline Groth and Towe, Indianapolis, IN, for plaintiffs.

Timothy W. Woods, Jones Obenchain Ford Pankow and Lewis, South Bend, IN, Eric P. Simon, Kreitzman Mortensen and Simon, New York City, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on a motion to dismiss for failure to state a claim filed by defendant Heritage Cable Vision Associates d/b/a TCI of Michiana and a motion to reconsider the court's refusal to remand filed by the plaintiffs. The court presumes a familiarity with its October 10, 1995 memorandum and order denying the plaintiffs' motion to remand. *Atchley v. Heritage Cable Vision Associates,* 904 F.Supp. 870 (N.D.Ind. 1995). For the following reasons, the court denies the plaintiffs' motion for reconsideration and grants the defendant's motion to dismiss.

The plaintiffs, all members of Local 1393, International Brotherhood of Electrical Workers and the defendant, Heritage Cable Vision Associates, d/b/a TCI of Michiana are parties to a collective bargaining agreement ("CBA") that covered the period December 8, 1994 to September 15, 1996. On April 28, 1995, Mr. Atchley and other members of Local 1393 filed an action against TCI in St. Joseph County Circuit Court. The complaint alleges that TCI violated IND.CODE § 22–2–5–1 (the "Wage Payment Statute") by its delinquent payment of wage increases and signing bonuses to the plaintiffs. (Complaint ¶ 9). Article 7 of the CBA between IBEW and TCI provides for the wage increases. The signing bonuses were agreed upon during negotiations that preceded the CBA's execution. The complaint further alleges that the plaintiffs are entitled to liquidated damages pursuant to IND.CODE § 22–2–5–2 for failure to pay the additional money in a timely fashion. Thus, the complaint frames the plaintiffs' cause of action as one arising under Indiana statutory law.

TCI removed the case to this court, contending that the plaintiffs' complaint alleged a breach of an obligation created by the CBA which must, pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, be resolved in a federal forum. The notice alleged that this court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441 and 1446 and the LMRA. The plaintiffs sought the case's remand to the St. Joseph County Circuit Court pursuant to 28 U.S.C. § 1447(c), arguing that the claims presented and the remedies sought in the complaint arise exclusively out of Indiana statutory law. On October 10, this court denied the plaintiffs' motion to remand this action to the St. Joseph Circuit Court and determined that jurisdiction over the action exists.

TCI also filed a motion to dismiss, arguing that since § 301 of the LMRA completely preempts the plaintiffs' state law claims and since the plaintiffs did not exhaust a grievance and arbitration procedure, the complaint states no claim upon which relief can be granted. The plaintiffs responded to the motion to dismiss and moved to reconsider the October 10 order, again arguing that § 301 does not preempt their claim, that the court does not have subject matter jurisdiction, and that the action should be remanded to state court. The plaintiffs' motion to reconsider is considered first.

## I. *MOTION TO RECONSIDER*

The plaintiffs have cited no statutory or procedural authority or judicial precedent supporting their motion to reconsider the court's refusal to remand the action to state court. "Whether to reconsider an interlocutory order is within the sound discretion of the district court." *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. 1289, 1294 (E.D.Wis.1995). Exercising this discretion, "a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment." *Fisher v. National Railroad Passenger Corp.*, 152 F.R.D. 145, 149 (S.D.Ind.1993). Thus, motions to reconsider interlocutory orders may be entertained and granted as justice requires. *Acme Printing Ink Co.*, 891 F.Supp. at 1295; *see also Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 816 F.Supp. 1286, 1287 (N.D.Ill.1993); *Continental Cas. Co. v. Great American Ins. Co.*, 732 F.Supp. 929, 931 (N.D.Ill.1990); Advisory Committee Notes to 1946 Amendment to Rule 60(b) ("Interlocutory judgments are not brought within the restrictions of [Rule 60(b) ], but rather they are left subject to the complete power of the court rendering them to afford such relief as justice requires.").

A motion to reconsider, if entertained by the court, should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence. *Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 936 (7th Cir.1991); *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985); *Amcast Indus. Corp. v. Detrex Corp.*, 822 F.Supp. 545 (N.D.Ind.1992), *aff'd in part, rev'd in part on other grounds*, 2 F.3d 746 (7th Cir.1993), *and cert. denied*, 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994). The plaintiffs' motion to reconsider, which simply recasts and clarifies arguments that have already been presented to and consid-

**1384**

ered by the court, does not meet this standard.

Essentially, the plaintiffs argue that although the CBA must be referred to when addressing their claim, the CBA is only tangentially related to the claim, and none of the elements of the claim under the Wage Payment Statute require the court to substantially interpret any provision of the collective bargaining agreement. Thus, the plaintiffs' argument concludes, the claim exists independently of the collective bargaining agreement and should not be preempted. These arguments do not raise any point that was not previously addressed by this court in the October 10 order.

■■■ The plaintiffs emphasize that determination of the date when their right to the wage increase and bonuses vested, rather than when the money was to be included in their paychecks, is decisive to their claim and merely requires reference to, rather than interpretation of, Article 7 of the CBA. This distinction between the vesting of rights and the inclusion of funds in paychecks, however, does not fundamentally alter the court's preemption analysis; resolution of the plaintiffs' claim is substantially dependent upon interpreting Article 7 of the CBA. The CBA is not "merely a tangential consideration in the resolution of an otherwise independent state law action." *Loewen Group Int'l v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir.1995). The plaintiffs essentially allege that TCI administered the wage increases and bonuses improperly under standards set forth by the CBA. *See Douglas v. American Information Technologies Corp.*, 877 F.2d 565, 573 n. 13 (7th Cir.1989). This is a cause of action for breach of the CBA dressed as a wage payment regulation claim arising under Indiana statutory law. Construed in this manner, the plaintiffs' claim is governed by federal law because § 301 "provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of those agreements." *Loewen Group Int'l, Inc.*, 65 F.3d at 1421. "Thus, state-law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead explicitly a federal cause of action." *Douglas*, 877 F.2d at 569.

■■■ The plaintiffs argue that their claim arises out of Indiana statutory law and so is independent of the CBA. The court recognizes that "federal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship." *Douglas*, 877 F.2d at 569. If the state law claim requires the court to interpret terms of the collective bargaining agreement, however, the independent state-created rights yield to substantive federal labor policy. Moreover, the Supreme Court has specifically rejected the argument that a claim is not subject to preemption by virtue of the non-negotiable character of the right which gives rise to the claim:

> While it may be true that most state laws that are not preempted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures non preemption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be preempted by § 301. Similarly, if a law applied to all state workers but required, at least in certain instances, collective-bargaining agreement interpretation, the application of the law in those instances would be preempted.

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407 n. 7, 108 S.Ct. 1877, 1882 n. 7, 100 L.Ed.2d 410 (1988). Thus, the plaintiffs' claim would not automatically be immunized from the preemptive effect of § 301 even if the provisions of IND.CODE §§ 22–2–5–1 and 22–2–5–2 are characterized as a nonnegotiable right equally shared by all employees in Indiana.

The Supreme Court recently revisited § 301 preemption in *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2079, 129 L.Ed.2d 93 (1994). The Court's reasoning in *Livadas* supports the conclusion reached by this court in the October 10 order. Section 203 of the California Labor Code is the enforcement provision of a California wage payment statute that provides that "[i]f an em-

ployer discharges an employee, the wages earned and unpaid at the time of discharge are due and immediately payable." *Livadas,* — U.S. at ——, 114 S.Ct. at 2072. Although the Court held that a claim under § 203 was not preempted, it specifically noted that "[t]his is not to say, of course, that a § 203 claim penalty claim could never be preempted by § 301." *Id.* at ——, 114 S.Ct. at 2079 n. 19. The Court reasoned that the "primary text for deciding whether Livadas was entitled to a penalty was not the Food Store Contract, but a calendar." *Id.* at ——, 114 S.Ct. at 2079.

In this case, as noted in the October 10 Order, the CBA between TCI and the IBEW is the primary text for deciding whether the plaintiffs are entitled to a penalty for late payments. The terms of the collective bargaining agreement define and create the right to receive the wage increase and bonuses. The plaintiffs' claim alleges a breach of the terms of this agreement; without a failure to pay under the CBA's terms, there can be no state-created right to statutory damages. Accordingly, the claim is subject to § 301 preemption which "ensures that federal law will be the basis for interpreting collective-bargaining agreements...." *Lingle,* 486 U.S. at 409–410, 108 S.Ct. at 1883.

Neither this order nor the October 10 order stands for a broad proposition or holding that IND.CODE §§ 22–2–5–1 and 22–2–5–2 inevitably will be preempted in every case where the issue is raised. Rather, as in *Livadas,* the analysis used to assess plaintiffs' claims are limited to the facts of the case. On the facts presented in this case, the Indiana wage payment statute and its enforcement provision are completely preempted by § 301.[1] Having revisited the reasoning and analysis of the October 10 order, the court concludes that there was no error warranting a reversal of its prior conclusion.

## II. *MOTION TO DISMISS*

■■■ As discussed above, the plaintiffs' claims are preempted. Once preempted, a claim is deemed to have arisen under § 301

and requires reference to federal substantive law. *See Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d 342, 347 (1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). Under federal labor law principles, "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). Because of this policy, "[t]he federal law governing section 301 claims also includes ... a general requirement that employees must attempt to exhaust grievance and arbitration procedures before bringing suit in federal or state court." *Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d at 347 (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965)); *see also Roman v. U.S. Postal Service,* 821 F.2d 382 (7th Cir.1987). This principle requiring individual employees to exhaust contractual remedies applies equally to unions bringing a § 301 claim. *National Post Office Mail Handlers v. U.S. Postal Service,* 594 F.2d 988, 991 (4th Cir.1979). Thus, exhaustion of mandatory contractual remedies is a prerequisite to the right of an employee, union, or employer to bring a federal court action under § 301 for breach of a collective bargaining agreement.

■■■ TCI argues that this action should be dismissed because the plaintiffs did not exhaust contractual remedies provided for in the CBA. Article 4 of the CBA provides a three-step method of resolution of grievances, with the last step being final and binding arbitration. As a first step, an "employee or group of employees and/or the Steward having a grievance shall present same to the immediate supervisor...." CBA Art. 4 § A. Next, "[i]f the grievance is not satisfactorily adjusted in STEP 1, it may be submitted to the General Manager and/or the Director of Engineering." *Id.* Finally, "[i]f the grievance is not satisfactorily adjusted in STEP 2, the Union may submit the grievance to the American Arbitration Association (hereinafter called 'AAA'), for binding

---

1. The court also notes that other courts have held that claims involving other statutes concerning wage payment regulation are preempted by

§ 301. *See, e.g., Evans v. Einhorn,* 855 F.2d 1245 (7th Cir.1988).

and final resolution in accordance with the rules and regulations of the AAA." *Id.* at § B.. TCI argues that .the plaintiffs were obligated to file their grievance regarding the payment of bonuses and wage increases and ultimately submit their claim to binding and final arbitration as mandated by the CBA.

The plaintiffs made a verbal demand for the bonuses and wage increases on December 19, 1994. On January 9, 1995, and the shop steward filed a grievance alleging that TCI violated Article 7 of the CBA. After the grievance was denied, the steward advanced the grievance to step 2 in accordance with the procedures outlined in Article 4. This grievance was also denied, but the union did not submit the grievance to final and binding arbitration.

Article 4 of the CBA limits the scope of the grievance and arbitration procedure to only cover events that occur within specified time periods:

> All complaints, disputes, controversies, differences or grievances ... which arise solely on or after the *execution* date but before the expiration date of this Agreement, shall be settled, determined, adjusted and processed in accordance with the procedures set forth in this Article. Any and all disputes between the parties arising before the *effective* date of this Agreement or after the termination date thereof/or any and all disputes based on facts, incidents or occurrences taking place prior to the *effective* date or subsequent to the termination date, are expressly excluded from coverage and are not in any way encompassed by this Article.

*Id.* (emphasis added). At best, this creates ambiguity regarding the parties' intent.

The effective date of the agreement, and the date when IBEW ratified the agreement, is December 8, 1994. The agreement was executed by TCI on January 26, 1995, and by the IBEW on February 6. The CBA's effective date and its date of execution appear to be distinct and separate dates; the terms "effective" and "executed" are not synonymous words susceptible to being interchanged to express the same meaning. Nonetheless, Article 4 uses these terms in a fashion that creates ambiguity regarding what specific periods of time the parties agreed were covered by the CBA.

▮▮▮▮ Article 4 is ambiguous as to whether the effective date or the execution date is to be used to evaluate whether a claim is covered by the agreement, leaving it uncertain whether the plaintiffs were obligated to exhaust contractual remedies before seeking judicial resolution of the dispute. The settled federal policy, however, is to construe "labor contracts in favor of finding mandatory grievance procedures." *Painters District Council No. 2 v. Tiger Stripers, Inc.,* 582 F.Supp. 860, 864 (E.D.Mo.1984). "Where a collective bargaining agreement is ambiguous with respect to the effect of its arbitration provisions, doubts should be resolved in favor of arbitration." *Id.* (citing *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n,* 683 F.2d 242, 244 (7th Cir.1982)). *See also Int'l Brotherhood of Teamsters v. Logistics Support Group,* 999 F.2d 227, 231 (7th Cir.1993) (demanding specificity in order to exclude certain matters from arbitration provisions). Under these principles, the plaintiffs were obligated to exhaust their contractual remedies prescribed by the CBA before commencing their litigation. Since the plaintiffs did not do so, the defendant's motion to dismiss must be granted.

### III. *CONCLUSION*

The court committed no error of law by retaining jurisdiction over this action in its October 10 order. This action is preempted by § 301 of the LMRA and, consequently, was properly removed to federal court. Therefore, having considered the plaintiffs' motion to reconsider, the October 10 order will remain undisturbed, and the court DENIES the plaintiffs' motion for reconsideration (filed October 23, 1995 (# 17)). Furthermore, since the plaintiffs were obligated to proceed to arbitration with their dispute over the CBA, the court GRANTS the defendant's motion to dismiss (filed May 24, 1995 (# 3)), and DISMISSES the plaintiffs' complaint. The clerk is directed to enter judgment for

the defendant and against the plaintiffs, with each party to bear its own costs.

SO ORDERED.