Tony L. MASON, Plaintiff-Appellant,

v.

SOUTHEASTERN ILLINOIS ELECTRIC COOPERATIVE, INC., and International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 702, Defendants-Appellees.

No. 85–2721.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1986.

Decided March 25, 1987.

Ronald R. Eckiss, Harris, Lambert & Wilson, Marion, Ill., for plaintiff-appellant.

Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., John M. Ferguson, Belleville, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and MAROVITZ, Senior District Judge.*

MAROVITZ, Senior District Judge.

Plaintiff Tony Mason brought an action against his former employer, Southeastern Illinois Electric Cooperative, Inc. ("SEIC"), alleging a wrongful discharge, and against the International Brotherhood of Electrical Workers, AFL–CIO, Local Union No. 702 ("Local 702" or "the Union"), alleging that

---

* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

Local 702 breached its duty of fair representation. After a jury trial, the jury returned a verdict in Mason's favor and against both of the defendants in the amount of $74,016.00. Upon review Chief Judge Foreman, however, found that there was insufficient evidence to support this verdict and granted the defendants' motions for judgment notwithstanding the verdict. In addition, the defendants' alternative motions for a new trial were conditionally granted. Mason now appeals the district court's decision. We affirm.

Mason was hired on June 14, 1976 by SEIC. He was SEIC's first black employee. Upon commencing work with SEIC Mason joined Local 702.

During his first year with SEIC Mason worked as an apprentice tree trimmer out of SEIC's Benton, Illinois district headquarters. He then became a journeyman tree trimmer, working out of the Benton and then the Eldorado, Illinois district headquarters. Subsequently, Mason was transferred to the Lake Egypt, Illinois district headquarters where he started work as an apprentice lineman. About a year later, in 1981, Mason was transferred to the Marion, Illinois district headquarters.

The Marion district headquarters had only one line crew. The crew consisted of three men. Terry Moore was the crew foreman and Don Fisher was a journeyman lineman. Both Moore and Fisher are white. Mason joined the line crew as an apprentice lineman. The line crew was supervised by Roy Wise.

On Mason's first day of work at Marion both Moore and Fisher were dressed as Klansmen. Previously, Mason had been referred to as "the million dollar nigger." This name apparently arose after Mason was interviewed by a government employee in conjunction with a 1976 loan application by SEIC.

In April of 1982 Mason was injured in a work related accident. Mason was off from work until January 3, 1983. During November and December of 1982 Mason had an affair with Patricia Ann Moore, Terry Moore's wife.

Mason returned to work on January 3, 1983. By January 25th Moore had learned of his wife's affair with Mason. Moore discussed the situation with Wise on the morning of January 25th. Shortly after Mason arrived for work on the morning of January 25th, Mason, Moore and Wise had a discussion in Wise's company car. Wise started the conversation by saying, "Tony, we have a situation here that I believe Terry has something that he wishes to say to you." Moore then stated, "It's down the road for you boy. You can no longer work here. Your little secret love affair with my wife is over." The conversation proceeded for about five minutes while Mason initially denied the affair prior to admitting to it. Moore cried during this time. Wise then said to Mason, "We have a serious situation here. It affects the operations of this crew and something needs to be resolved." Mason responded that, "Well, I will just leave, you won't have to worry about me anymore." Wise then asked of Mason, "Tony, is that what you want to do?" To which Mason replied, "That's what I'll have to do."

Moore then left the car while Wise and Mason stayed on to work out some details. It was agreed that Wise would deliver Mason's final paycheck and termination check to him at a restaurant the next day. Mason received and cashed both checks on the following day, January 26, 1986.

On February 2, 1983, eight days after the incident with Moore and Wise, Mason contacted Local 702. Mason spoke with the Union business manager, Harvey Fryer. Mason explained that he had been fired because of his affair with Moore's wife. Fryer then indicated that Wise had called him on January 25th and had informed him that Mason had quit. Mason denied quitting and asked that a grievance be filed. Fryer then stated that, "I simply don't agree with the black and white relationship to begin with. But it is my job to represent you and I will see what I can do."

Fryer then arranged a meeting with Wise and another SEIC supervisor for the next day. At the meeting Wise told Fryer

about what had occurred in Wise's car and that Mason had resigned. At the end of the meeting, it was agreed that a hearing would be held on the grievance at a meeting on February 10th. On February 10th Fryer met with several SEIC officials and two of their labor attorneys. SEIC continued to insist that Mason had quit and the meeting ended with no resolution. This completed Fryer's investigation.

After the February 10th meeting Fryer suggested that Mason contact the Union's trial attorney, Charles Werner. Fryer had requested that Werner continue the investigation into Mason's grievance. Werner was located in St. Louis, Missouri. Fryer told Mason that the Union would either pay his car mileage or bus fare to St. Louis and back.

Mason met with Werner on March 9th. On March 11th Werner sent Fryer a letter recommending that the grievance not be submitted to arbitration because in Werner's opinion Mason had quit and, in any event, there was just cause for dismissal. On March 24th Fryer wrote Mason that the Union's investigation indicated that there was insufficient merit to warrant arbitration.

On July 22, 1983, Mason filed a complaint against the defendants alleging that SEIC had wrongfully discharged him in violation of a collective bargaining agreement and because of his race, and that Local 702 had breached its duty of fair representation. After a two-day trial, the jury returned a verdict in Mason's favor. On the special interrogatory forms, the jury answered "yes" to each of the following questions:

(1) Do you find by a preponderance of the evidence that plaintiff was discharged from his employment by Southeastern Illinois Electric Cooperative, Inc.?;

(2) Do you find by a preponderance of the evidence that plaintiff was discharged from his employment by Southeastern Illinois Electric Cooperative, Inc., without just cause; and

(3) Do you find by a preponderance of the evidence that Local 702, IBEW breached its duty of fair representation

toward plaintiff by engaging in intentional misconduct; that is, did Local 702 deliberately and unjustifiably refuse to process plaintiff's grievance to arbitration? The jury awarded $74,016.00 against both defendants. The defendants then moved for judgment n.o.v. or, in the alternative, for a new trial. The district court granted the defendants' motions for judgment n.o.v. and conditionally granted their motions for a new trial. The plaintiff now appeals, claiming that the district court erred in granting the defendants' motions for judgment n.o.v.

According to Mason, the district court erred by granting the defendants' motions for judgment n.o.v. because the jury's verdict was supported by sufficient evidence. This court has stated that, "[t]he standard for determining whether a judgment notwithstanding the verdict should be granted is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1213 (7th Cir. 1985). Evidentiary conflicts must be resolved in favor of the prevailing party and the credibility of witnesses may not be judged. *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984). However, judgment n.o.v. is proper where the verdict is only supported by a mere scintilla of the evidence. *Tice*, 761 F.2d at 1213. "In other words, if there is insufficient evidence upon which a reasonable person could properly base a verdict, entry of judgment n.o.v. is appropriate." *Id.*

The district court found that it was unreasonable for a jury to infer from the facts that Mason had been discharged. We agree. Approximately five minutes after Moore has told Mason, "It's down the road for you boy. You can no longer work here," and after Mason finally admitted to the affair with Moore's wife, Wise said to Mason that, "we have a serious situation here. It affects the operations of this crew and something needs to be resolved." In

response to this statement Mason stated that, "well, I will just leave, you won't have to worry about me anymore." Wise followed up on Mason's response by asking him whether "that [is] what you want to do?" To which Mason responded, "that's what I'll have to do."

It is clear to this court that a reasonable jury could not infer from these facts that Mason had been discharged. Wise indicated that the problem needed to be resolved. It was Mason who chose to resolve the situation by leaving his job. The inference that Mason was fired is unreasonable in light of Wise's follow up question, "Tony, is that what you want to do?" Accordingly, the district court's order granting SEIC's motion for judgment n.o.v. is affirmed.

■ The district court also found that there was insufficient evidence from which a reasonable jury could infer that Local 702 had breached its duty of fair representation. A union's duty of fair representation is not breached unless its conduct toward a union member is "arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Furthermore, it is the law of this circuit that a union's breach of its duty of fair representation must be the result of intentional misconduct. *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 243–44 (7th Cir.1986) *citing Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981). A union's duty is not violated by inept, careless, lackluster or grossly negligent conduct. *Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir.1983).

■ There is no evidence in this case which suggests that Local 702 intentionally acted in bad faith toward Mason. Fryer investigated the grievance claim, filed a grievance on Mason's behalf and argued the grievance at a hearing. Subsequently, Fryer referred Mason to Werner, Local 702's attorney, for further investigation into the claim. After reviewing the claim and conducting a further investigation it was Werner's opinion that the grievance was without merit. There is no evidence from which a reasonable jury could infer

that Fryer or Werner sabotaged "a 'possibly meritorious grievance ... because the worker is on the outs with the union or is a member of some racial or other minority or is not a union man....'" *Camacho*, 786 F.2d at 244 *quoting Dober*, 707 F.2d at 294. Therefore, the district court's order granting Local 702's motion for judgment n.o.v. is affirmed.

In summary, Mason's appeal is denied and the judgment of the district court is affirmed and therefore the issue of a new trial is moot.