**Paul E. BAILEY, et al.,**
**Plaintiffs-Appellants,**

v.

**BICKNELL MINERALS, INC., and Union Mines, Inc., Defendants-Appellees.**

No. 86–2448.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1987.

Decided April 27, 1987.

Gary R. Brock, Currier & Brock, Bicknell, Ind., for plaintiffs-appellants.

Daniel C. Emerson, Bose, McKinney & Evans, Indianapolis, Ind., for defendants-appellees.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

A depressingly large number of recent cases grows out of refusals to use or abide by the grievance-arbitration machinery of collective bargaining agreements. E.g., *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192 (7th Cir.1987); *Machinists & Aerospace Workers v. Clearing*, 807 F.2d 618 (7th Cir.1986); *Dreis & Krump Manufacturing Co. v. Machinists & Aerospace Workers*, 802 F.2d 247 (7th Cir.1986); *Elevator Constructors Union v. Home Elevator Co.*, 798 F.2d 222 (7th Cir.1986). We attempt to discourage these refusals to say die (or even to say try) by awarding attorneys' fees, as in *Hill*, *Clearing*, and *Dreis & Krump*. Cf. *Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1326 (7th Cir.1986). An arbitration clause in a collective bargaining agreement is supposed to ensure speedy resolution of disputes. Those who refuse to invoke the process or abide by the awards endanger the productivity of the workplace and divert judicial time from the disputes that courts are supposed to resolve. Today we consider a case filed by litigants who ignored the arbitral process.

In May 1982 Bicknell Minerals, Inc., a mining firm, signed a collective bargaining agreement with Local No. 1979A of the Progressive Mine Workers of America (the Union). It was supposed to last three years. In 1984 Bicknell asked the Union to accept lower wages. The Union's negotiators put a package of reductions before the members for a vote on August 9, 1984. The vote of the members present at the meeting was a tie; the Union's "pit committee" then accepted two votes by telephone, both favoring the reductions. The committee told Bicknell that the proposed agreement had been ratified, and Bicknell immediately put into effect the changes (expressed as an 11–page addendum to the collective bargaining agreement).

On August 19 Paul Bailey, the President of the Union, filed a grievance under the collective bargaining agreement, contending that because the acceptance of telephoned votes was irregular, Bicknell had not received authorization to implement the addendum. Bicknell rejected the grievance because, in its view, the Union is bound by its agents' declaration that the members had approved the proposal. Neither Bailey nor the Union asked for arbitration under the agreement, § 6.1 of which provides: "Whenever any dispute arises between the Company and the Union as to the meaning and application of the provisions of this Contract, or should any local trouble of any kind or character arise at the mine," the dispute will proceed through three steps followed by arbitration. Bailey instead pursued his complaint within the Union, which decided not to accept the telephonic votes and in December 1984 asked Bicknell to rescind the addendum. Bicknell refused. No employee filed a grievance from this decision or asked for arbitration. Instead Bailey and 22 other employees filed this suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, contending that the implementation of the addendum violated the collective bargaining agreement.

The parties consented to final disposition of the case by a magistrate under 28 U.S.C. § 636(c). The magistrate granted Bicknell's motion to dismiss, concluding that the 23 employees had not exhausted the contractual grievance resolution machinery. Under *Del Costello v. Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 2289–90,

76 L.Ed.2d 476 (1983); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); and *Macon v. Youngstown Sheet & Tube Co.*, 698 F.2d 858, 860 (7th Cir.1983), among many other cases, exhaustion of available contractual remedies usually is a precondition to suit under § 301. The plaintiffs argued to the magistrate that the arbitration clause in the contract did not cover internal union disputes. The magistrate concluded, however, that the dispute here dealt with Bicknell's right to deviate from the terms of the 1982 agreement, and that an arbitrator could have ordered Bicknell to rescind the addendum. The arbitration clause in § 6.1 was exceedingly broad. Bicknell might have persuaded the arbitrator that the Union was bound by its representation on August 9 that the addendum had been ratified, but the arbitrator also could have decided otherwise. The magistrate recognized that there are exceptions to the requirement of exhaustion; for example, employees may file suit if the Union's failure to pursue arbitration was inconsistent with its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). But the plaintiffs conceded that the Union did not breach its duty, a concession that was well advised in light of *Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242 (7th Cir. 1986), and *Hoffman v. Lonza*, 658 F.2d 519 (7th Cir.1981).

■ On appeal the plaintiffs have abandoned their argument in the district court in favor of a new one: that Bicknell "repudiated" the agreement, which makes a request for arbitration futile and therefore allows a direct suit. See *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Two things are wrong with this contention. First, it was not urged before the magistrate, and (with exceptions not material here) a civil litigant may not raise an issue for the first time on appeal. E.g., *National Wrecking Co. v. Spangler, Jennings, Spangler & Dougherty*, 782 F.2d 101, 104 (7th Cir.1986). Second, it hopelessly misconceives the nature and basis of the "repudiation" doctrine.

When one party to an agreement proclaims that it no longer considers the obligation to arbitrate binding, then a request for arbitration is futile; the other party need not waste time but may proceed straight to court. The "repudiation" doctrine is one of many dealing with anticipatory breach of contract. Yet there must be an anticipatory rejection of the arbitration clause; a failure to implement the (other side's version of the) substantive provisions of the agreement is not enough. See *Drake Bakeries, Inc. v. Bakery & Confectionery Workers*, 370 U.S. 254, 260–62, 82 S.Ct. 1346, 1350–51, 8 L.Ed.2d 474 (1962); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1488 (7th Cir.1985).

Bicknell did not say that it would refuse to arbitrate. The addendum negotiated in 1984 did not modify § 6.1 of the collective bargaining agreement, although it modified many other sections. The plaintiffs' contention amounts to the assertion that any breach of contract (here the refusal to pay the wages agreed on in 1982) is a "repudiation" of the commitment to arbitrate. But the purpose of the arbitration clause is to resolve disputes about contractual terms. In the plaintiffs' eyes, every dispute would allow the complainant to bypass arbitration because the other side's failure to do as the complainant wishes "repudiates" the agreement. From this perspective, the circumstances that call for arbitration also make arbitration unnecessary. It is hard to see how a reasonably careful lawyer could miss the difference between repudiating the agreement to arbitrate (which excuses a demand for arbitration) and disagreeing about the continued effect of some substantive provision of the contract (which does not).

Plaintiffs also maintain that pursuing the grievance-arbitration machinery would have been futile because Bicknell enforced the addendum in bad faith. Plaintiffs believe that they could show at trial that Bicknell implemented the addendum despite knowing of the telephonic votes, which amounts to "bad faith". The arbitrator would have been a neutral, however, so that Bicknell's truculence would not

have prevented relief. We also do not think that knowledge of the votes is "bad faith". The validity of the process used to take the vote is a debatable matter; taking an adverse position on a debatable matter is not bad faith; an employer also is entitled to count on a union to determine the validity of its internal processes. It is easy to hurl charges of "bad faith", and if accusations of this kind excused compliance with the arbitral process there would soon be little left. Appellate courts have held repeatedly, in cases the plaintiffs do not discuss, that accusations of "bad faith" do not excuse an attempt to use the grievance-arbitration machinery. E.g., *D'Amato,* 760 F.2d at 1488–89; *LeBoutillier v. Air Line Pilots Ass'n,* 778 F.2d 883, 885 (D.C.Cir. 1985). The employee must try the process, and if "bad faith" thwarts its completion, only then may the employee file suit. The sole case on which the plaintiffs rely is *Cox v. Guy F. Atkinson Co.,* 468 F.Supp. 677 (N.D.Ind.1979), which was decided before *D'Amato* and is therefore not authoritative to the extent it excuses an employee's resort to arbitration just because the employer has misbehaved. At all events, *Cox* found invocation of the grievance machinery futile because the grievance could not have been resolved unless the employer conceded criminally culpable conduct, *id.* at 679, 682–83. Bicknell hardly had its back to the wall in that way.

The plaintiffs' obduracy—more accurately, the obtuseness of their lawyer— has prolonged a case that should not have been filed. The claims made on appeal were neither preserved in the district court nor plausible as original matters. Bicknell's brief in this court asked for an award of attorneys' fees under Fed.R.App.P. 38. The plaintiffs had an opportunity to file a reply brief demonstrating that their appellate arguments have substance or that an award of fees is inappropriate for some other reason. They elected not to file a reply brief. An award is appropriate here, as in *Hill, Clearing,* and *Dreis & Krump,* because the arguments are frivolous on an objective standard. They have consumed the resources of Bicknell and the time of the court, which leaves less time for other litigants whose claims belong here. See *Weinstein v. University of Illinois,* 811 F.2d 1091, 1098 (7th Cir.1987). Telling would-be litigants that the law is against them is an essential part of a lawyer's job. See *In re TCI, Ltd.,* 769 F.2d 441, 446–47, 450 (7th Cir.1985); Note, *The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility,* 61 N.Y.U.L.Rev. 300 (1986). Plaintiffs' lawyer (who represented plaintiffs from the filing of the complaint through this appeal) should have told his clients this. We therefore order counsel for the plaintiffs to pay, out of his own pocket, the attorneys' fees reasonably incurred by Bicknell in defending against the appeal. Counsel for Bicknell have 15 days to file with the clerk of this court a statement (with itemization) of the fees reasonably incurred.

AFFIRMED, WITH SANCTIONS