Russell HINER, Plaintiff,

v.

BDP COMPANY, Defendant.

No. IP 87–265–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 10, 1989.

Richard J. Seryak, Miller Canfield Paddock and Stone, Detroit, Mich., Robert P. Johnstone, Barnes & Thornburg, Indianapolis, Ind., for plaintiff.

John F. Townsend, Jr., Townsend Hovde & Montross, Indianapolis, Ind., for defendant.

## ORDER ON DEFENDANT BDP COMPANY'S MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on the motion for summary judgment filed by defendant BDP Company. Also pending is a motion for leave to amend the Complaint and a motion to publish the deposition of Robert G. Fisher. After reviewing the submissions, the Court GRANTS the Motion for Leave to Amend the Complaint and GRANTS the Motion to Publish Deposition.

As to summary judgment, the parties have briefed the issues and the matter is ready for resolution.[1] After review of the parties' submissions, and for the reasons set forth below, the Court now GRANTS defendant's Motion For Summary Judg-

---

1. The Court denies defendant's request for oral argument as it finds the parties' submissions dispositive of the issues.

ment and DISMISSES this case WITH PREJUDICE.[2]

## I. BACKGROUND OF THE CASE

Plaintiff Russell Hiner, a former employee of defendant BDP Company, filed this action in Marion County Superior Court in February of 1987. In his one-page complaint, plaintiff alleged that the BDP Company wrongfully discharged him from his employment. Subsequently, the defendant removed the action to federal court on the basis of federal question jurisdiction.[3] Both parties agree that this action is brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Defendant moved for summary judgment on March 1, 1987, arguing that plaintiff had failed to exhaust his contractual grievance procedures and that he had failed to allege a breach of his union's duty of fair representation. Subsequently, plaintiff moved to amend his complaint on April 29, 1988, to add an allegation that the plaintiff's union breached its duty of fair representation. Plaintiff did not, however, join his union as a party-defendant to this action.

In support of its motion for summary judgment, defendant now argues that plaintiff failed to exhaust his contractual grievance procedures, and contends there is no requisite showing of bad faith or intentional misconduct on the union's behalf. Plaintiff resists the motion arguing that his union refused to prosecute a grievance on his behalf and breached its duty of fair representation by otherwise refusing to represent him.

## II. UNDISPUTED MATERIAL FACTS

The basic facts of this case are for the most part undisputed. Those facts as taken favorably for the non-movant for purposes of this summary judgment motion are as follows:

Plaintiff Russell Hiner, an Indiana resident, began his employment as a forklift driver for the defendant in 1959. He joined the United Steelworkers of America, Local 4315, and remained a member of the union throughout his employment with BDP. Hiner paid dues to the union and was once a shop steward for the union. Hiner understood that he would be represented by a union and covered by the collective bargaining agreement. He also understood that the contract covered his wages, fringe benefits, and terms of employment. He had a personal copy of the collective bargaining agreement.

Article 7 of the contract provided for a discharged employee to seek review through a grievance procedure. Any such grievance was to be filed within three days of the date of discharge. Article 17 of the contract details the mandatory grievance procedure that culminates in final and binding arbitration.

During his employment with BDP, Hiner dealt most often with Wayne Watson, the chairman of the grievance committee. Hiner states that he got along with Watson. He also got along with union representative Charlie Sams and had no major differences with Edward Conover, another union official. Hiner admits that he really got along pretty well with all of his union representatives.

During his employment plaintiff received assistance from union representatives in filing a number of grievances. In October of 1980, plaintiff received a three day disciplinary suspension for suspected theft. He filed a grievance but the discipline remained in effect. In May of 1982, Hiner filed a grievance contesting a suspension for leaving the plant. As a result of the grievance Hiner was sent to a physician, placed on medical leave, and issued a three

---

**2.** The Court notes in passing that this case is factually and procedurally quite similar to another case pending in this Court, *Zeffel v. BDP Company,* 716 F.Supp. 1147 (S.D.Ind.1989). Although the legal issues raised and the results are much the same in each case, the Court does not otherwise attach any significance to the similarities and has considered the facts of each case separately.

**3.** This cause was originally assigned to Judge S. Hugh Dillin, and was later transferred to the undersigned.

day disciplinary layoff after the leave of absence. The disciplinary notice issued to Hiner in October of 1982 warned that any further violation would result in termination.

In January and February of 1985, Hiner filed grievances regarding the company's use of outside contractors to do certain work. The grievances were resolved with the company agreeing to be more consistent in the assignment of work, and making payment to Hiner of four hours call-in pay.

On September 5, 1986, plaintiff left the plant during his 3:00 PM break, approached a security guard at the east gate, and told the guard that he was leaving a sack containing some articles. Hiner placed the sack on the ground next to the fence just beyond the guard's gate. At the end of his shift, Hiner returned to the gate and asked the guard if someone had picked up the sack. The sack left by Hiner contained two small motors that were covered by rags.

On September 9, 1986, Hiner, union officials, and company representatives met in a company office concerning the events of September 5, 1986. Management told Hiner that the company had investigated the incident regarding the sack and suspected Hiner of attempted theft. Hiner stated that while he was walking toward the guard gate an individual unknown to him approached him and asked him to leave the sack at the guard shack. Management officials expressed their disbelief of Hiner's story, and indicated that Hiner could be fired.

After Hiner's explanation of the events of September 5, union officials asked management if they would consider early retirement for Hiner in lieu of further action. Union officials indicated to management that Hiner's wife had considerable health problems and that health insurance was an issue. Management agreed to early retirement and advised the union officials that Hiner would not be fired if he voluntarily elected to retire.

The union officials then told Hiner that it was in his best interest to take early retirement. Plaintiff elected to take early retirement and signed the application for benefits on September 11, 1986. He thereafter commenced receiving pension benefits of $315.86 per month, received $500 in severance pay, and continued on a health insurance package. Hiner was 59 years old at the time he accepted early retirement.

Hiner did not personally file a grievance at any time concerning his early retirement nor did he specifically ask any of his union representatives to file a grievance on his behalf. He admits that no one told him he could not file a grievance. Hiner told Watson that he "wanted something done about it," but did not specifically tell Mr. Watson what action he thought Watson should take. By saying what he did he expected the union to file a grievance.

### III. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The change in attitude has not gone unnoticed in the Seventh Circuit, *see, e.g., Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988), and must be followed by this district court where appropriate.

## IV. CONCLUSIONS OF LAW

A. *The plaintiff's complaint is barred for failure to exhaust his available grievance procedures:*

■ The first issue to be addressed is whether the plaintiff exhausted his available grievance procedures with respect to his termination. It is a well settled rule of labor law that an employee must attempt to exhaust his available grievance procedures before seeking relief from the federal courts for alleged violations of a collective bargaining agreement. This maxim, which was first announced in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), has been reaffirmed on countless occasions. *See, e.g., United Paperworkers Intern. Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987). The rule prohibits suits against the employer as well as the union. *Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985) (employer); *Mechmet,* 825 F.2d at 1178 ("if a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him").

The rule is grounded on the policy that the union is the exclusive representative of the employees and should be afforded the opportunity to carry out its missions in a consistent, uniform manner. As the Supreme Court explained in *Maddox,*

> Union interest in prosecuting employee grievances is clear. Such activity com-plements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to imple-ment the procedures and found them so.

379 U.S. at 653, 85 S.Ct. at 616. An exception to the rule exists where it would have been futile for the employee to make his grievance. *Bailey v. Bicknell Minerals, Inc.,* 819 F.2d 690 (7th Cir.1987); *Cox v. Guy F. Atkinson Co.,* 468 F.Supp. 677 (N.D.Ind. 1979).

In this case, then, the narrow question is whether the plaintiff's statement that he "wanted something done about it" suffices as an exhaustion of his contractual grievance remedies. First, the Court finds as a matter of law that despite the plaintiff's general statement to the union representative, he did not exhaust his grievance procedures. Plaintiff admits that he never specifically asked the union to grieve the issue, nor did plaintiff seek to file a grievance on his own, which he had the power to do. An employee must seek to invoke the available procedures so that the matter can be disposed of expediently if possible.

■ Second, the Court does not find the futility exception applicable here. A recent case from the D.C.Circuit Court is instructive here. In *LeBoutillier v. Air Line Pilots Association,* 778 F.2d 883 (D.C.Cir. 1985), the court affirmed the dismissal of an employee's § 301 action due to the failure to exhaust contractual remedies. The court rejected the employee's futility argument, writing, "[Plaintiff] never put his 'futility' theory to the test by filing a protest once it became clear to him that he was indeed discharged...." 778 F.2d at 885. "[I]t was up to [plaintiff] to carry the reinstatement process forward by in-

voking the contractual protest procedure.' " *Id.* (citation omitted).

So it is in this case, for plaintiff never sought to invoke the grievance procedure to test his futility theory. As the Seventh Circuit has noted in an analogous case, "The employee must try the process, and if 'bad faith' thwarts its completion, only then may the employee file suit." *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 693 (7th Cir.1987) (affirming dismissal on exhaustion grounds where futility was not shown).

Accordingly, because the available grievance procedure was not followed, any federal lawsuit for breach of the agreement cannot stand.

**B.** *The union did not breach its duty of fair representation:*

■ Additionally, plaintiff has failed to bring forth evidence suggesting a triable issue of fact on his § 301 claim. It is well settled that all claims of this nature against the union and the employer arise under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See, e.g., Oglesby v. RCA Corp.*, 752 F.2d 272, 275–277 (7th Cir.1985) ("all rights and claims arising from a collective bargaining agreement in an industry affecting interstate commerce arise under federal law"); *Mitchell v. Pepsi Cola Bottlers, Inc.*, 772 F.2d 342, 344–45 (7th Cir.1985). An indispensable predicate to such a suit is proof that the union breached its duty of fair representation. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–1564, 67 L.Ed.2d 732 (1981); *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983) ("To prevail against either the company or the union ... [employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union.").

In order to show a breach of the duty of fair representation, the plaintiff must meet a high standard. Mere negligence will not suffice; rather, there must be a showing that the union acted arbitarily, discriminatorily, or in bad faith. *Mason v. Southeastern Illinois Elec. Coop., Inc.*, 815 F.2d 38, 41 (7th Cir.1987). There must be substantial evidence of "fraud, deceitful action or dishonest conduct." *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 523 (7th Cir.1981); *accord, Camacho v. Ritz–Carlton Water Tower*, 786 F.2d 242 (7th Cir.1986). "A union's duty is not violated by inept, careless, lackluster or grossly negligent conduct." *Mason*, 815 F.2d at 41. Thus, a union's decision not to further prosecute an employee's grievance, absent some showing of intentional misconduct or bad faith, simply does not give rise to an action for unfair representation. *Dober v. Roadway Express, Inc.*, 707 F.2d 292 (7th Cir.1983); *Mitchell v. Pepsi–Cola Bottlers, Inc.*, 772 F.2d 342, 343 (7th Cir.1985) (no violation where union told employee it would be useless to proceed with grievance).

A review of the facts in this case, even with all inferences taken favorably for the plaintiff, establishes that plaintiff has not met this high burden. There is no "substantial evidence" of any misconduct or bad faith by the union. To the contrary, the plaintiff himself admits of a good relationship with the union. He had filed other grievances in the past and had successful results with some of them. The fact that the union chose not to pursue his grievance or investigate the allegations in this instance simply does not carry with it any badges of bad faith.

The evidence undisputably shows that the union was present at all stages and heard the employer's and employee's versions. The union then helped negotiate this agreement which led to the 59–year-old employee's early retirement with benefits. The union counselled the plaintiff to take the severance package, health benefits, and retirement pay and be done with the allegations rather than face a drawn out affair that could lead to outright termination. Absent some evidence that the union acted in bad faith, this case can proceed no further.

Accordingly, because the plaintiff has failed to establish a triable issue as to his

union's duty of fair representation, the § 301 action against his employer must necessarily fail. Summary judgment is thus entered in favor of the defendant, and this action against the defendant is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.