**Vernon ZEFFEL, Plaintiff,**

v.

**BDP COMPANY, Defendant.**

**No. IP 87–264–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 10, 1989.

Richard J. Seryak, Miller Canfield Paddock and Stone, Detroit, Mich., Robert P. Johnstone, Barnes & Thornburg, Indianapolis, Ind., for plaintiff.

John F. Townsend, Jr., Townsend Hovde & Montross, Indianapolis, Ind., for defendant.

### ORDER ON DEFENDANT BDP COMPANY'S MOTION FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

This cause comes before the Court on the motion for summary judgment filed by defendant BDP Company. After review of the parties' submissions, and for the reasons set forth below, the Court now GRANTS defendant's Motion For Summa-

ry Judgment and DISMISSES this case WITH PREJUDICE.

## I. BACKGROUND OF THE CASE

Plaintiff Vernon Zeffel, a former employee of defendant BDP Company, filed this action in Marion County Superior Court in early 1987. In his one-page complaint, plaintiff alleged that the BDP Company wrongfully discharged him from his employment. Subsequently, the defendant removed the action to federal court on the basis of federal question jurisdiction.[1] Both parties agree that this action is brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Defendant moved for summary judgment on December 1, 1987, arguing that plaintiff had failed to exhaust his contractual grievance procedures and that he had failed to allege a breach of his union's duty of fair representation. Subsequently, plaintiff moved to amend his complaint on January 25, 1988, to add an allegation that the plaintiff's union breached its duty of fair representation. Plaintiff did not, however, join his union as a party-defendant to this action. On January 27, 1988, this Court granted the plaintiff's motion to amend his complaint.

Defendant now makes three arguments in support of its motion for summary judgment. First, BDP asserts that the amended complaint concerning a claim of unfair representation does not relate back to the original complaint and is thus time-barred. Second, defendant argues that plaintiff nonetheless failed to exhaust his contractual grievance procedures. Third, defendant contends there is no requisite showing of bad faith or intentional misconduct on the union's behalf. Plaintiff resists the motion arguing that his union refused to prosecute a grievance on his behalf and breached its duty of fair representation by otherwise refusing to represent him.

## II. UNDISPUTED MATERIAL FACTS

The basic facts of this case are for the most part undisputed. Those facts as taken favorably for the non-movant for purposes of this summary judgment motion are as follows:

Plaintiff Vernon Zeffel, an Indiana resident, began his employment as a forklift driver for the defendant in May of 1968. The next month he joined the United Steelworkers of America, Local 4315, and remained a member of the union throughout his employment with BDP. Zeffel paid dues to the union and had the opportunity to use his bargaining unit seniority for transfers, shift preference, and classification assignments.

At the time he was hired Zeffel understood that he would be represented by a union and covered by the collective bargaining agreement. He also understood that the contract covered his wages, fringe benefits, and terms of employment. He had a personal copy of the collective bargaining agreement.

Article 7 of the contract provided for a discharged employee to seek review through a grievance procedure. Any such grievance was to be filed within three days of the date of discharge. Article 17 of the contract details the mandatory grievance procedure that culminates in final and binding arbitration.

During his employment with BDP, Zeffel attended several union meetings. He had no trouble with his union representatives, Charlie Sams (vice president of the Local), Marion Qualls and Wayne Watson (committeemen), and Edward Conover (president of the Local). Plaintiff got along with these individuals and stated there was no personal dislike or any animosity between him and these representatives.

During his employment plaintiff received assistance from union representatives in filing several grievances. Plaintiff understood that the grievance procedure existed to allow employees to challenge employer actions. Plaintiff filed six different griev-

---

**1.** This cause was originally assigned to Judge Sarah Evans Barker, and was later transferred to the undersigned in September of 1987.

ances during his employment. He always sought the assistance of a committeeman because he "didn't write." "[T]he committeeman always wrote them up for me and I'd sign them and he would put them through."

On December 11, 1986, plaintiff was suspended for an alleged attempt to steal aluminum coil from his employer. Zeffel met with representatives of management and his Local on December 11, 1986, and understood that he was being charged with theft. Thereafter plaintiff met in the union hall with his union representatives prior to a second meeting with management in which the subject of early retirement was discussed. The union representatives and management officials then discussed the possibility of early retirement for Zeffel. The union representatives later discussed the situation with Zeffel and advised him to take early retirement, stating that he would get monthly benefits, continue to get health insurance, and that he would get $500 severance pay. In referring to the possibility of early retirement, one union representative told him, "You're better off. Take it." One representative stated that while Zeffel could beat the charges, it would probably take three or four years, and that he would be better off taking the pension. He stated that Zeffel's only choice was to take early retirement as offered by the company or be fired. Plaintiff was 61 years of age at the time he was accused of theft by the company.

On December 15, 1986, plaintiff signed a one page letter of agreement in which he elected to take early retirement benefits. The agreement was also signed by the union vice president, two union committeemen, and company representatives. Prior to the signing, the company explained to Zeffel the results of their investigation, including what Jim Wade, an outside truck driver with whom Zeffel allegedly conspired, had told company officials. Zeffel also signed an application for retirement benefits. Since January 1, 1987, Zeffel has been receiving pension benefits of $251 per month in accordance with the negotiated agreement program contained in the labor agreement.

At some point during these events, but before December 15th, plaintiff asked union representative Charlie Sams about filing a grievance. Sams told him that a grievance should already be written up. Zeffel thereafter did not file a grievance on his own. After he signed the retirement papers on December 15, 1987, Zeffel did not ask anyone from the union to do anything for him nor did he lodge any complaints with the union. After signing these papers Zeffel did not ask the union to file a grievance nor did he attempt to file a grievance on his own.

## III. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The change in attitude has not gone unnoticed in the Seventh Circuit, *See, e.g., Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988), and must be followed by this district court where appropriate.

## IV. CONCLUSIONS OF LAW

A. *The plaintiff's complaint is not barred at this stage for failure to exhaust his available grievance procedures:*

■ The first issue to be addressed is whether the plaintiff exhausted his available grievance procedures with respect to his termination. It is a well settled rule of labor law that an employee must attempt to exhaust his available grievance procedures before seeking relief from the federal courts for alleged violations of a collective bargaining agreement. This maxim, which was first announced in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), has been reaffirmed on countless occasions. *See, e.g., United Paperworkers Intern. Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987). The rule prohibits suits against the employer as well as the union. *Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985) (employer); *Mechmet,* 825 F.2d at 1178 ("if a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him").

The rule is grounded on the policy that the union is the exclusive representative of the employees and should be afforded the opportunity to carry out its missions in a consistent, uniform manner. As the Supreme Court explained in *Maddox,*

> Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

379 U.S. at 653, 85 S.Ct. at 616. An exception to the rule exists where it would have been futile for the employee to make his grievance. *Bailey v. Bicknell Minerals, Inc.,* 819 F.2d 690 (7th Cir.1987); *Cox v. Guy F. Atkinson Co.,* 468 F.Supp. 677 (N.D.Ind.1979).

In this case, the Court cannot say as a matter of law that the plaintiff failed to exhaust his contractual grievance procedures. Although the plaintiff's deposition testimony is sometimes confusing and conflicting, the plaintiff did testify as well as affirm by affidavit that he asked the union sometime around December 12, 1986, to file a grievance concerning this incident. The plaintiff further testified that the union representative stated that one was on file for him. Plaintiff admits that after signing his retirement papers on December 15, 1986, he did not seek to file a grievance.

Here there is at least a factual question as to whether plaintiff exhausted his contractual remedies that precludes summary judgment on this ground. While it is clear that the plaintiff did not seek to file a grievance after the situation had been resolved by way of the early retirement agreement, he did attempt to file one upon learning of the theft charges and suspension. The Court cannot say at this stage as a matter of law that plaintiff either failed to exhaust his remedies or that further attempts to grieve would have been futile.

B. *The union did not breach its duty of fair representation:*

■ Assuming arguendo that there are no problems with relation back of the

amended complaint,[2] the plaintiff has nonetheless failed to bring forth evidence suggesting a triable issue of fact on his § 301 claim. It is well settled that all claims of this nature against the union and the employer arise under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See, e.g., Oglesby v. RCA Corp.,* 752 F.2d 272, 275–277 (7th Cir.1985) ("all rights and claims arising from a collective bargaining agreement in an industry affecting interstate commerce arise under federal law"); *Mitchell v. Pepsi Cola Bottlers, Inc.,* 772 F.2d 342, 344–45 (7th Cir. 1985). An indispensable predicate to such a suit is proof that the union breached its duty of fair representation. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981); *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) ("To prevail against either the company or the union ... [employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union.").

In order to show a breach of the duty of fair representation, the plaintiff must meet a high standard. Mere negligence will not suffice; rather, there must be a showing that the union acted arbitrarily, discriminatorily, or in bad faith. *Mason v. Southeastern Illinois Elec. Coop., Inc.,* 815 F.2d 38, 41 (7th Cir.1987). There must be substantial evidence of "fraud, deceitful action or dishonest conduct." *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 523 (7th Cir.1981); *accord, Camacho v. Ritz–Carlton Water Tower,* 786 F.2d 242 (7th Cir.1986). "A union's duty is not violated by inept, careless, lackluster or grossly negligent conduct." *Mason,* 815 F.2d at 41. Thus, a union's decision not to further prosecute an employee's grievance, absent some showing of intentional misconduct or bad faith, simply does not give rise to an action for unfair representation. *Dober v. Roadway Express, Inc.,* 707 F.2d 292 (7th Cir.1983);

*Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d 342, 343 (7th Cir.1985) (no violation where union told employee it would be useless to proceed with grievance).

A review of the facts in this case, even with all inferences taken favorably for the plaintiff, establishes that plaintiff has not met this high burden. There is no "substantial evidence" of any misconduct or bad faith by the union. To the contrary, the plaintiff himself admits of a good relationship with the union. He had filed other grievances in the past and had successful results with some of them. The fact that the union chose not to pursue his grievance or investigate the allegations in this instance simply does not carry with it any badges of bad faith.

The evidence undisputably shows that the union helped negotiate this agreement which led to the 61–year–old employee's early retirement with benefits. The union counselled the plaintiff to take the severance package, health benefits, and retirement pay and be done with the allegations rather than face a drawn out affair that could lead to outright termination. Absent some evidence that the union acted in bad faith, this case can proceed no further.

Accordingly, because the plaintiff has failed to establish a triable issue as to his union's duty of fair representation, the § 301 action against his employer must necessarily fail. Summary judgment is thus entered in favor of the defendant, and this action against the defendant is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

---

**2.** Without reaching the matter, the Court notes that the defendant's arguments on this issue are

compelling.