**John M. WRIGHT, Jr.**

**v.**

**SAFEWAY, INC. and United Food & Commercial Workers Union, Local 27.**

**Civ. No. L-91-1784.**

United States District Court, D. Maryland.

Sept. 25, 1992.

---

Harvey S. Wasserman, Annapolis, Md., for plaintiff.

Francis X. Coonelly, Washington, D.C., for defendant Safeway Stores, Inc.

Joel A. Smith, Baltimore, Md., for defendant United Food & Commercial Workers Union, Local 27 AFL–CIO.

## MEMORANDUM

LEGG, District Judge.

In this case the Court is called upon to decide the motions for summary judgment filed by defendants Safeway, Inc. ("Safeway") and the United Food & Commercial Workers Union, Local 27 (the "Union"). This action for compensatory and punitive damages arises under 29 U.S.C. § 185 (1982) (section 301 of the Labor Management Relations Act of 1947). The Court has considered the papers submitted by the parties and finds that there is no need for a hearing. *See* Local Rule 105.6 (D.Md. 1989). For the reasons set forth below, the Court GRANTS the defendants' motions with respect to all counts of the complaint.

### I. *Facts*

Mr. Wright is a former employee of Safeway who worked for the company for fifteen years as a meat cutter and received above-average performance evaluations. On October 10, 1990, Wright was working the 2:00 p.m. to 10:00 p.m. shift at the Edgewater, Maryland Safeway store. At approximately 3:45 p.m. that day, Wright's wife phoned him and asked him to pick up some photographs that had been developed through the store. During one of his breaks, at approximately 4:30 p.m., Wright picked up the photographs from a display stand in the store and put them in his apron.

At that time, Shirley Robertson, the store's Customer Service Manager, was sitting in the Store Manager's office and watched Wright through a one-way mirror. Robertson became suspicious that Wright did not intend to pay for the photographs and called the Store Manager, John Hassett, who told her to watch Wright to see if he paid for the photos before he left.[1]

After Wright punched out at 10:00 p.m., he put the envelope of photos in his shirt pocket and picked up and paid for a loaf of bread. He left the store without paying for the photos, and was observed doing so by Robertson. Robertson then called Hassett again and told him what had transpired.

Wright alleges that he forgot to pay for the pictures and realized this after he returned home that evening. He allegedly told this to his wife, and she wrote out a check for $5.24, the cost of the prints. Wright alleges that he intended to pay for the prints the following day, but that when he reported to work at 7:00 a.m. there were no cashiers on duty to pay.[2] Five minutes after Wright began working, Hassett called him into his office and told him that a security guard had seen Wright take the photos without paying for them. Wright responded "no sir", and Hassett repeated the charge two more times, with Wright responding "no sir" both times.

---

1. Although Wright's wife came into the store and spoke to him twice after Wright had picked up the photos, he failed to give them to her.

2. There was, however, a night stocker on duty whom Wright could have paid.

Finally, Hassett asked Wright if he took photos out of the store, and Wright said "yes" and asked if he could pay for them. Hassett told Wright that it was too late and placed him on suspension. Wright never attempted to give Hassett the check he allegedly had in his pocket.

Wright then spoke with Arvil Foster, the Union's shop steward at the Edgewater store. After their conversation, Foster spoke with Hassett on Wright's behalf. Later that day, Wright spoke with Curt Vandenberg, the union's business representative, and related to him his conversation with Hassett, including his admission that he had taken the photos without paying for them.

Pursuant to his conversation with Foster, Hassett decided to give Wright the opportunity to voluntarily resign so that his record would not be blemished by a termination. On October 12, Hassett called Wright and told him of his decision. At some point that evening, Wright decided to accept Hassett's offer and wrote a letter of resignation. On October 13 and 14, Wright spoke with Curt Vandenberg but did not tell him about his intention to resign. On October 15, Foster called Wright and advised him to resign. Wright tendered his letter of resignation on October 15. Wright never filed a grievance with the union or asked the union to file one on his behalf.

Wright filed suit against Safeway and the Union, alleging (i) Safeway breached the collective bargaining agreement by discharging him without just cause and (ii) the union breached its duty of fair representation by failing to investigate the incident adequately and/or file a grievance on his behalf.[3] Safeway and the union have moved for summary judgment on three grounds: (i) Wright's suit is barred because he failed to exhaust the grievance and arbitration procedures established in

his collective bargaining agreement; (ii) Wright has introduced no evidence to substantiate his claim of wrongful discharge; and (iii) Wright has failed to show that the union breached its duty of fair representation.

II. *Discussion*

█ A collective bargaining agreement is a tripartite contract between an employee, an employer, and a union. Under 29 U.S.C. § 185, an employee may bring a federal action alleging breach of his collective bargaining agreement.[4] A federal court has jurisdiction over such a case, however, only if the employee can show that he has exhausted the remedies afforded him in his collective bargaining agreement prior to commencing suit in district court. *Adkins v. Times–World Corp.*, 771 F.2d 829, 832 (4th Cir.1985); *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

█ In this instance, as in other cases, the applicable collective bargaining agreement provides for a multi-tiered dispute resolution procedure which is initiated by the filing of a complaint (also known as a grievance). Safeway alleges that Wright failed to file a grievance and cannot satisfy the jurisdictional prerequisite for bringing suit in this Court. Wright contends, however, that he is excused from this requirement because only his union had the right to initiate the grievance/arbitration procedure of his collective bargaining agreement. The task of this Court is thus to determine whether Wright meets the threshold requirement for bringing suit pursuant to 29 U.S.C. § 185.[5]

The Court first examines the language of the collective bargaining agreement in question. Article 22.3 of the agreement provides that "either party may ... [s]ubmit ... matter[s] to the Federal Mediation

---

**3.** A claim under 29 U.S.C. § 185 is a hybrid action against both the employer and the union.

**4.** 29 U.S.C. § 185(a) provides, in pertinent part, that:

> [s]uits for violation of contracts between an employer and a labor organization ... may be

brought in any district court of the United States having jurisdiction of the parties ..."

**5.** The Court, therefore, refrains from consideration of the merits of Safeway's decision to terminate Wright.

and Conciliation Service [for arbitration]." Because it is clear that the parties to the agreement are Safeway and the union, they alone possess the power to invoke *arbitration* of a grievance.

Article 22.5 of the collective bargaining agreement, however, states:

> All complaints must be filed, in writing, within thirty (30) days after occurrence of the matter in dispute or disagreement, provided that any complaints in reference to dismissal must be filed, in writing, to the Employer within ten (10) days from the date of dismissal. Complaints not filed within the limits herein specified shall have no right of appeal by any party involved.

Although other provisions of the agreement refer specifically to rights possessed by the *parties* (Safeway and the union), article 22.5 does not. Moreover, article 22.5 states that only parties have the right to *appeal* a complaint, implying that persons other than parties (i.e., employees), have the right to file an initial complaint.[6]

Even if the union had the exclusive power to file a grievance, Wright has introduced no evidence which shows that he ever asked a union representative to file a grievance on his behalf or mentioned the grievance procedure to a union representative in any way. In fact, Wright admits in his deposition that he never brought up the subject of grievances with the union representatives with whom he spoke.[7]

Wright maintains, however that he attempted to invoke the grievance procedure because he asked Mr. Vandenberg to meet with management to resolve the matter, and because he told Mr. Foster that he thought it was unfair that the union, on October 15, had recommended he resign. Specifically, Wright claims that his statement to Foster on October 15 that "I don't think, I don't feel that it's right what

they're doing,"[8] and his statement to Vandenberg that "I feel I shouldn't have to lose my job for making an honest mistake,"[9] were sufficient to indicate to the union that he wanted it to file a grievance on his behalf.

The Court disagrees, and finds, as a matter of law, that Wright's statements to Vandenberg and Foster are insufficient to constitute an attempt to exhaust his contractual remedies. The facts of this case are strikingly similar to those encountered by the Southern District of Indiana in *Hiner v. BDP Co.*, 716 F.Supp. 1152, 1155 (S.D.Ind.1989), and we adopt the reasoning of the *Hiner* court. In that case, the plaintiff was charged with theft and told by management that he could be fired. Unlike Wright, the plaintiff in *Hiner* did not confess to any wrongdoing. Hiner's union representatives met with management and convinced management to allow Hiner to take an early retirement. The union advised Hiner of this opportunity, and Hiner took advantage of it. Hiner never filed a grievance or asked any of the union representatives to file one on his behalf. He did, however, tell one union representative that he "wanted something done about" the situation. *Id.* at 1155.

Hiner later filed suit under the Labor Management Relations Act, claiming that his comment to the union representative was a sufficient attempt to invoke the grievance procedure and that he had exhausted all contract remedies. The Court found, as a matter of law, that his comment was *not* sufficient to exhaust the plaintiff's contractual remedies and granted the defendant's motion for summary judgment. *Id.* at 1155. *See also Mechmet v. Four Seasons Hotels, LTD.*, 825 F.2d 1173, 1178 (7th Cir.1987) ("if a worker doesn't even ask his union to press a grievance for him he can hardly complain that it

---

6. Wright cites *Black–Clawson Co. v. Machinists*, 313 F.2d 179 (2d Cir.1964), as support for his argument. However, the Court held in *Black–Clawson* that an employee lacked the power to compel *arbitration*, not that the employee lacked the power to file a *grievance*.

7. Wright Dep. at 144, 146–47, 152–53, 155–58.

8. Wright Dep. at 150.

9. Wright Dep. at 153.

has failed to represent him").[10]

■ The Court finds Wright's actions legally insufficient to constitute an attempt to invoke the grievance procedure for the following reasons: (i) during the course of Wright's five conversations with Vandenberg and two conversations with Foster, Wright never asked either individual to file a grievance, never inquired whether or not he could file a grievance, and never even mentioned the word "grievance"; (ii) Wright admitted in his deposition that there was "nothing specifically I asked them to do for me," and that he never asked Vandenberg or Foster to pursue the matter after Wright filed his resignation;[11] (iii) on October 15, after Wright had tendered his resignation, he told Vandenberg that he did so "because I didn't want it to go on my record that I'm a thief,"[12] indicating that he understood his options and chose to resign to protect his employment record, rather than contest a termination for theft.[13] As a result, the Court finds that Wright's federal suit is barred for failure to exhaust his contractual remedies. The Court accordingly GRANTS the defendants' respective motions for summary judgment.

---

**10.** Wright cites *Scott v. Anchor Motor Freight, Inc.,* 496 F.2d 276 (6th Cir.1974), as support for his contention that his actions were sufficient to invoke the grievance procedure. *Scott,* however, bears little resemblance to the facts of this case. Mr. Scott wrote two letters to his union representatives complaining of pay shortages and an unfair discharge and requesting a meeting and hearing. Moreover, the union involved was newly-formed and lacked the capability to file a grievance, so the Court excused Scott from the ten-day filing requirement. *Id.* at 278–79. In this case, the union was fully able to file a grievance, but Wright never indicated in any way that he wanted a grievance filed.

**11.** Wright Dep. at 156–57.

**12.** Wright Dep. at 153.

**13.** Wright also claims that his situation falls within one of the exceptions to the exhaustion requirement—"when the union has the sole power to invoke the higher stages of the grievance machinery and *wrongfully* refuses to do so." *Mabane v. Metal Masters Food Service Equip. Co.,* 541 F.Supp. 981, 989 (D.Md.1982) (emphasis in text). However, the Court finds this exception inapplicable to the facts of this case because Wright never initiated the grievance procedure at all.

Wright's case also does not fall within another exception to the exhaustion requirement: "when resort to the contract remedy would be 'wholly futile'." *Id.* at 989 (citation omitted). This exception was recognized by the Supreme Court in *Glover v. St. Louis–San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), and applies only when the union is improperly biased against the employee and affords him no real opportunity for redress. In *Glover,* for example, there was an active conspiracy between the union and the employer against the plaintiffs. Wright has neither argued nor introduced evidence which suggests that an analogous situation existed in this case.