**Mitzi BAKER, Plaintiff,**

v.

**Marvin RUNYON, et al., Defendants.**

**No. 96 C 8595.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 16, 1997.

Stanley L. Hill, Stanley L. Hill & Associates, P.C., Chicago, IL, Robert D. Whitfield, Attorney at Law, Chicago, IL, for Mitzi Baker.

Eileen M. Marutzky, Asst. U.S. Atty., Chicago, IL, for Marvin T Runyon, Leslie Thomas, Ronald Brignac, Robert Bisbee.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

### BACKGROUND

Plaintiff Mitzi Baker has been employed as a letter carrier by the United States Postal Service ("Postal Service") since 1989. She is also a member of the National Association of Letter Carriers ("NALC" or the "Union"), a union that serves as the exclusive bargaining agent for letter carriers. The terms and conditions of Baker's employment are governed by a collective bargaining agreement ("CBA") between the NALC and the Postal Service.

Between 1990 and 1992, Baker worked at the Graceland–Annex postal facility where defendant Robert Bisbee served as Station Manager. In 1991 and 1992, Baker filed Equal Employment Opportunity ("EEO") complaints alleging claims of sexual harassment and retaliation by Bisbee and other employees. An administrative judge issued a Recommended Decision on June 14, 1994 (the "June Decision") finding that Baker had

been subjected to a hostile environment and retaliation in violation of Title VII; the Postal Service accepted this conclusion in a Final Agency Decision issued on August 8, 1994. This latter decision prescribed remedial relief for Baker including the expungement of negative reports from her personnel files and the reassignment of Baker to the Postal Facility of her choice. Baker appealed this decision, and, eventually, these complaints were heard in federal district court where Magistrate Judge Bobrick granted summary judgment on April 18, 1996 against the Postal Service for sexual harassment and retaliation activities that violated Title VII. *Baker v. Runyon*, 922 F.Supp. 1300, (N.D.Ill.1996), *rev'd in part*, 114 F.3d 668 (7th Cir.1997) (*"Baker I"*).

From around March 6, 1993 to August 1995, the Postal Service assigned Baker to the Jackson Park facility where defendant Leslie Thomas served as Station Manager and defendant Ronald Brignac worked as a letter carrier. On or about May 6, 1994, Jackson Park supervisors instructed employees not to delay political mail. A bit later, rumors began to circulate at the Jackson Station that Baker had reported to upper management that she had seen some co-workers delaying political mail. As a result, numerous co-workers, including defendant Brignac, started calling Baker a "snitch" (and other derogatory names), threatening her with violence, and treating her in a generally nasty manner; supervisors, too, including defendant Thomas, treated her with hostility and assigned her to undesirable tasks, some of which allegedly contravened Baker's medical restrictions. In one particular incident on July 14, 1994, Brignac announced over the Jackson Station public address system that there was "a rat and a stool pigeon" in the waste department, where one day earlier supervisors assigned Baker to work alone. For the next several days, Postal Service employees harassed her loudly and frequently. Thereafter, Baker continued to experience periodic harassment including an incident where a postal employee threw mail at her and called her a "dog bitch". Baker complained to supervisors at Jackson Park

on September 16, 1994 about this incident and reported it to an EEO counselor.

On or about November 2, 1994, Baker received a Letter of Warning (LOW) from supervisor Carol Coursey. Baker filed a union grievance to rescind the LOW. The Union processed the grievance according to the terms of its CBA, and the grievance was assigned to a manager not employed at the same facility as Baker for adjudication. Unfortunately for Baker, though, the Union assigned the grievance to the very same Bisbee who had sexually harassed her when they were co-workers at the Graceland–Annex facility. Bisbee decided the grievance against Baker, but the Union appealed his decision and eventually settled the grievance with the Postal Service.

Baker is now working at the Merchandise Mart postal facility, where, she alleges, management continues to harass her.

Baker filed a five-count complaint against Postmaster Marvin Runyon, supervisor Leslie Thomas, letter carrier Ronald Brignac, and supervisor Robert Bisbee alleging: (1) Runyon and Thomas were responsible for retaliating against her in violation of Title VII because she filed and won an EEO claim; (Count I) (2) Runyon and Thomas violated her rights under the Privacy Act, 5 U.S.C. §§ 552a(d)(1)–(4), (e)(2), (4), (9), (10), and (f)(1)–(4), by maintaining secret personnel files containing information about her and failing to advise her of their existence or her right to view them (Count II); (3) Thomas and Brignac violated her First Amendment right of privacy and free speech by harassing her for reporting postal staff delays of political mail (Count III); (4) Runyon and Bisbee deprived her of a fair grievance process in violation of the Due Process Clause of the Fifth Amendment (Count IV); and (5) Runyon refuses to comply with the June 14, 1994 EEOC Finding and Recommended Decision adopted by the Postal Service in its August 8, 1994 Final Agency Decision, and Baker seeks enforcement of it here pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 (Count V).

Defendants now seek dismissal of or summary judgment on Counts III, IV and V.[1]

---

1. Originally, defendants also sought dismissal of or summary judgment on Count II, but subsequently declined to proceed with this. Pl.Repl.Br. at 2.

## DISCUSSION

Since the parties have asked me to consider matters outside the pleadings it is appropriate to view defendants' motion to dismiss and/or for summary judgment as a motion for summary judgment under the Federal Rules of Civil Procedure, Rule 56(c). *Roman v. United States Postal Service*, 821 F.2d 382, 385 (7th Cir.1987). Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty, Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining the existence of any genuine issues of material fact, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

### A. Counts III and IV: Baker's Constitutional Claims

In Counts III and IV Baker asserts claims for violations of her First and Fifth Amendment rights, but defendants argue that this court should refuse to recognize these constitutional claims because various other remedies are available to Baker.

#### 1. Count III: First Amendment Claim

■ In Count III, Baker alleged that Brignac and Thomas harassed her and created a hostile work environment in violation of the First Amendment because they thought she informed Postal Service management that political mail was being delayed by personnel at the Jackson Station (i.e., she engaged in free speech). Defendants argue that this claim should be dismissed because Baker may seek relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), or under the collective bargaining agreement between her Union and the Postal Service.

In *Bush v. Lucas,* the United States Supreme Court decided that where plaintiff's claims arising out of the employment context were governed by comprehensive procedural and substantive provisions that provided meaningful remedies against the employer, it was inappropriate for the court to supplement that regulatory scheme with a non-statutory damages remedy. 462 U.S. 367, 388–89, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The Seventh Circuit applied *Bush* in a case where several postal workers brought Fifth Amendment substantive due process claims against the Postal Service, and the court observed that

> Congress expressly authorized the adoption of final and binding grievance provisions in Postal Service collective bargaining agreements, 39 U.S.C. § 1206(b), and since the collective bargaining agreement between the Postal Service and the employees' union establishes a multi-step procedure which culminates in binding third-party arbitration [ ] we are unable to determine how this system is less adequate than the one in Bush.

*Ellis v. United States Postal Service,* 784 F.2d 835, 839–40 (7th Cir.1986).

Indeed, Article 15 of the 1990 National Collective Bargaining Agreement governing Baker's employment relationship with the Postal Service designed an extensive grievance-arbitration process. The agreement creates a multi-step process by which employees can assert their grievances, and it operates as follows: at Step 1 an employee must discuss the grievance with his or her immediate supervisor; the Union may appeal an adverse Step 1 decision to Step 2, and the local post office installation head or an outside designee reviews it; the Union may appeal an adverse Step 2 decision to Step 3 to be reviewed by Postal Service's Regional Director for Human Resources; the Union may appeal an adverse Step 3 decision to Step 4, the national level; and finally, the Union may appeal an adverse Step 4 decision to arbitration. At steps one through four, the Union representative has authority to settle or withdraw the grievance and the Postal Service representative has authority to decide it.

The CBA defines a grievance as "a dispute, difference, disagreement or complaint

between the parties related to wages, hours, and conditions of employment." Here, I see no reason why Baker could not have asserted a grievance within the CBA process to complain about Brignac and Thomas' actions which allegedly affected her "conditions of employment", and Baker does not present any evidence to show otherwise. Because Baker can remedy her grievance through the multi-step CBA process authorized by Congress, established by the Postal Service, and approved by the Seventh Circuit Court of Appeals, Baker cannot maintain a constitutional claim in this court upon these facts.

## B. Count IV: Fifth Amendment Due Process Claim

█ In Count IV Baker contends that she did not receive due process of the grievance that she filed to dispute the LOW she received from supervisor Carol Coursey because: (1) Bisbee—a postal employee who, the Postal Service conceded in *Baker I*, had sexually harassed Baker—decided her claim at Step 2 of the CBA process; (2) Bisbee's handling of her claim did not conform to CBA requirements; (3) Baker was only notified that a settlement had been reached at Step 3 months after it was executed; and (4) her supervisors fabricated a disciplinary problem which undermined the terms of the settlement. Defendants argue that Count IV should be dismissed because Bisbee's participation in the grievance process did not ultimately affect the outcome and because the process Baker received pursuant to the terms of the collective bargaining agreement constitutes due process.

I find that Baker was not deprived of due process for two reasons. First, the Seventh Circuit has found that the CBA process which Baker now attacks is adequate to provide "due process" in the constitutional sense, *Roman v. United States Postal Service,* 821 F.2d 382, 386 (7th Cir.1987), and rightfully so given, among other things, the numerous opportunities to appeal that the system affords a complainant. *See also Winston v. United States,* 585 F.2d 198 (7th Cir.1978). Admittedly, it is inherent in the

design of the Postal Service's grievance-arbitration process that a complainant will likely be acquainted with at least one of the decision makers in her case because Postal Service employees are the final decision makers at every step. This may especially be true at Step 1 because the grieving employee's supervisor has decision making authority at that step. However, the CBA also protects against potential conflicts of interest by providing a grieving employee with four opportunities to appeal, and the final appeals are decided at the regional and national levels.

Baker's case demonstrates that the CBA grievance process works and possesses an inbuilt capacity to remedy conflicts of interest. Although Bisbee, with whom Baker has had run ins in the past, decided her grievance at Step 2 (and denied it), the Union appealed this decision to Step 3 and settled it. Any unfairness that might have resulted from Bisbee's participation in the process was remedied by providing Baker the opportunity to appeal this decision, which she did with the effect of nullifying it.

█ Additionally, Baker complains that she did not receive prompt notice of the settlement, and she disputes its terms. These complaints do not suggest a due process claim so much as they call into question the quality of representation that Baker received during the grievance process. An employee may challenge the settlement of a grievance under the CBA by alleging that his or her employer violated the terms of the CBA or that the union breached its duty of fair representation. *See Mincey v. United States Postal Service,* 879 F.Supp. 567, 572 (S.D.S.C.1995) (quoting *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983)). However, Baker did not assert such claims.[2]

For all these reasons, I grant summary judgment to defendants on Counts III and IV.

---

2. In any case, it is probably too late for Baker to assert such claims for statute of limitations reasons. *See DelCostello,* 462 U.S. 151, 169–70, 103 S.Ct. 2281–94, 76 L.Ed.2d 476 (1983) (a six-

month statute of limitations applies to claims for a union's breach of its duty of fair representation and an employer's breach of a CBA).

## C. Count V: Claim to Enforce an Administrative Decision

 Defendants argue that Baker cannot now seek enforcement of the June 1994 administrative decision, the claim that she alleges in Count V, because it was already the subject of a lawsuit in *Baker I*, and thus it is barred by res judicata. "The doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the Univ. of Illinois*, 116 F.3d 235, 236 (7th Cir.1997). "For res judicata to apply in federal court three requirements must be met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits.... In the first requirement, a cause of action consists of a 'single core of operative facts' which give rise to a remedy." *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir.1995) (citations omitted). "[C]laims 'based on the same, or nearly the same, factual allegations' must be joined." *Perkins*, 116 F.3d at 236–37 (citations omitted). Thus, res judicata operates not only as a bar to further litigation of matters decided in the prior action, but also to any issues which could have been raised. *Id.*, 53 F.3d at 869–70.

Here, I find an identity of parties because both Baker and Runyon have been involved in this case and in *Baker I*, and I conclude that the district court entered a final judgment in the first action. It seems clear, too, that there is an identity of causes of action: both here and in *Baker I* plaintiff has been seeking to enforce the June 14, 1994 administrative decision and the remedies provided to Baker therein. Baker admits as much in her response brief to defendants' motion by stating "[p]laintiff litigated these [i.e. the remedies of assignment to a facility of her choice and of expungement] issues before Magistrate Bobrick...." Pl.Resp.Br. at 14. A portion of a court transcript from *Baker I* confirms this wherein her attorney stated on the record,

> The language I am suggesting is no more than the language they agreed to in the EEO decision, which, by the way, they have not lived up to. They were supposed to give her, back in 1994, a station of her choice as well as expunge her file.

If Baker did not like the magistrate judge's conclusion on these issues, she should have raised it in her appeal to the Seventh Circuit. But given that Baker had the opportunity to raise these issues in a prior lawsuit and in fact did so, this court cannot entertain them now.

Still, Baker maintains that this court should hear Count V because she filed a petition to enforce the June Decision with the EEOC pursuant to 29 C.F.R. § 1614.504(a), but the EEOC terminated processing her petition. 29 C.F.R. § 1614.504(a) provides that a complainant may notify the EEO Director if an agency fails to comply with the terms of a settlement agreement and request implementation of the terms or reinstatement of the complaint. Then, if the agency responds to the complainant in an unsatisfactory manner or fails to respond at all, the complainant may appeal to the Commission. EEOC regulations also provide that the agency or the Commission shall dismiss a complaint once it becomes the basis of a civil action. 29 C.F.R. §§ 1614.107(c), 1614.410. Here, Baker's petition to enforce was before the EEOC at the same time that a federal lawsuit pending in district court raised the issue of enforcing the June Decision, and so the EEOC became obligated to terminate processing Baker's complaint by its own regulations. By refusing to consider Baker's petition further the EEOC did not end all consideration of it, the EEOC merely yielded its jurisdiction over her claim so that the court could decide it. Res judicata precludes Baker from raising the same issues again (for the third time), and so I grant summary judgment to defendants.

## CONCLUSION

Summary judgment is granted on Counts III, IV and V.